THE PEOPLE ex rel. ROSALIE ADELE OAKLEY, Respondent, *v.* FREDRICK W. BLECKWENN, Treasurer of Long Island City, Appellant.

An owner of lands sold for unpaid assessments thereon, made under the provisions of the act providing for improvements in Long Island City (Chap. 326, Laws of 1874), is entitled to use "improvement certificates" issued under said act for the purpose of redeeming the lands sold, and upon tender of the requisite amount in such certificates it is the duty of the city treasurer to receive them.

The effect of said act is not limited in this respect by the provisions of the amendatory act of 1879 (Chap. 501, Laws of 1879), or of the act of 1886 (Chap. 656, Laws of 1886) which was in force at the time the assessments became due and under the provisions of which sales were required to be made.

Where, under the provisions of an act authorizing sales of land for unpaid assessments thereon for a municipal improvement, provision is made for redemption after the sale, and before a conveyance under it, the sale does not transfer a title, but the lien of the assessment continues until the sale is consummated by deed or lease, as provided; the purchaser only acquires this lien, which he holds in effect as assignee, until his inchoate rights are consummated and the title of the owner divested by the execution of a conveyance.

(Argued March 9, 1891; decided April 28, 1891.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, made December 11, 1890, which affirmed an order of Special Term granting a motion for a writ of peremptory mandamus.

This was a proceeding to compel the treasurer and receiver of taxes of Long Island City to accept "improvement certificates" issued by it in redemption of lands owned by the relator which had been sold for non-payment of assessments levied thereon under chapter 326 of the Laws of 1874.

The facts, so far as material, are stated in the opinion.

*George W. Stephens* for appellant. The assessment was paid at the time of the sale, and by such payment extinguished. (Laws of 1879, § 10; Laws of 1886, chap. 566, § 4; *In re Santiago*, 77 N. Y. 170; Black. on Tax Titles [5th ed.] § 701.) There is no authority given to the treasurer to receive anything but cash upon a redemption. (Laws of 1874, chap. 326.) A payment of an assessment is something entirely different from a redemption from a sale therefor. (*People ex rel.* v. *Cady*, 6 N. Y. Supp. 546.) The question in this case is not whether the city is to be a sufferer, but whether the purchaser is to be one. (*Remsen* v. *Wheeler*, 105 N. Y. 573; Cooley on Taxn. 498; Black. on Tax Titles, § 825; *McLanahan* v. *City of Syracuse*, 18 Hun, 259.)

*Joseph H. Choate, Treadwell Cleveland* and *William V. Rowe* for respondent. The assessment was discharged by paying to the treasurer the amount in improvement certificates, which were declared to be at all times receivable for the

purpose of discharging said assessment. ( *Williams* v. *Townsend*, 31 N. Y. 411.)

GRAY, J.   In order to pay the contractors and all the expenses of improving a large district of Long Island City, the commissioners, appointed for that purpose, were authorized by chapter 326 of the Laws of 1874 to issue what were known as "improvement certificates in Long Island City." The act provided that the assessments made thereunder for improvements should become a lien upon the lands affected ; but allowed a period of ten years to elapse before proceedings could be taken to enforce collections, or payment. The certificates so issued were made "receivable at all times at par and accrued interest in payment of any assessment" and when so received, they were to be retired and canceled.  In the same act it was also provided that after the expiration of the ten years from the filing of the assessment-roll the lands, upon which the assessments remained unpaid, should be sold ; and that the proceedings for and upon a sale should be after the manner prescribed by the law, at the time, for the sale of lands in said city for non-payment of city taxes. Provision was made in the section authorizing such sales that the lands " may be redeemed, and in default of such redemption title thereto should be given and perfected in the same manner, to the same extent and with the same force and effect," as in the case of sales for non-payment of city taxes.

By a later act (Chap. 501, Laws of 1879), the time for the running of assessments was reduced to eight years ; and this provision was also added to the law ; namely, that at sales " it shall be the duty of the officer making such sale to receive the improvement certificates * * * at par and accrued interest in payment of the assessment." The relator's lands were sold for non-payment of these assessments and, within the period of time allowed for redemption, a tender was made on her behalf to the appellant, the city treasurer, of the sum required by law in order to redeem the premises ; but it was made in these improvement· certificates.  The appellant refused to receive

them and demanded payment in cash. This proceeding was thereupon instituted to compel him to receive payment in the manner in which it was offered to be made. The appellant's position is that he was not authorized by law to receive anything but cash upon a redemption, and the argument in his behalf is, or must be substantially, based upon two propositions. In the first place, it is contended that the tax sale and the payment by the purchaser paid and extinguished the assessment, for the satisfaction of which the statute authorized these certificates to be received, and that the law contained no provision that payment in that mode might be made in redemption of the lands sold. In the second place, the proposition is that the law in force at the time of the sales and which regulated the proceedings for sales of lands for non-payment of city taxes and for redemption therefrom, contained the rules for the conduct of proceedings to enforce collection under the act of 1874, and no redemption under its terms could be made except through a payment in money. The act referred to was chapter 656 of the Laws of 1886 ; which was passed in relation to the collection of unpaid taxes and assessments in Long Island City ; and stress is laid, with respect to the owner's right to redeem, upon certain language of that act that he can only redeem "by paying the said treasurer, for the use of the purchaser, * * * the sum mentioned in the certificate given to him." This is construed to import, if not to direct, a payment in cash to the purchaser's use.

I do not think there can be a reasonable doubt as to what is the proper construction to be given to the terms of the act of 1874 ; but if there be such a doubt, then I think it one which should be resolved in favor of the construction claimed by the respondent. The question relates to the remedy, which the legislature has provided for the enforcement of the payment of the assessment, and it concerns the rights of the owner of the lands as well as those of their purchaser at the sale. It being claimed that the statute is not explicit in its provisions upon that head, consideration should be given to the general tenor and to the intention and purposes underlying its enact-

ment. If, by so doing, there is anything disclosed, either from the language itself, or by way of a just inference from the language, we should resort to such an aid in the work of construction. The best interpretation of a law is that which harmonizes its structure with the purpose and intention of its enactment. It is very clear from the act of 1874, authorizing the improvements in Long Island City, and it is the fact in proof, that those improvements were upon an extensive scale and were intended to reclaim low-lying, marsh lands. The provisions of the law, with respect to the manner of payment of the contractors who should undertake the work, and the unusual delay allowed to property owners for the discharge of their liability for the assessments levied for the work, seem to evidence an intention of the legislature that the burden of the great cost should rest as lightly as it could be imposed. The contractors were to receive their payment not in money, but in certificates issued by the commissioners at par and bearing only seven per cent interest ; while the assessment liens carried ten per cent interest. The certificates equalled the amount of the assessments for the work. They would induce purchase by the property owners, and especially so if the price was less than par, for the lien of the assessment could be discharged through that medium of payment. Obviously, only parties possessed of ample financial means, or in good credit, could contract for the work and, presumably, they would arrange their prices on such a scale as that the certificates taken at par would, nevertheless, eventually compensate them if sold in the market at a price less than par.

Then the property owners, whose lands were burdened with the cost of the work, were given ten (afterwards reduced to eight) years from the time the lien accrued, within which to pay it off, and though the interest running upon the unpaid assessment was at the annual rate of ten per cent, the certificates, which carried interest at only seven per cent, could be used in making payment. Of course, all such evidences of a consideration shown by the legislature for the property owners, in the district to be improved thus extensively, could not avail,

if by plain direction or by irresistible inference the use of improvement certificates, as mediums of payments, for the redemption by the owner of his property after its sale, was prohibited by the law.    But, where the way is open for the court to determine what the legislature intended should be the limitation upon the availability of these certificates, the evidence of an intention that the property owner shall be treated with every indulgence, should incline us to give that construction which most favors and protects his rights.    Judge DILLON in his work on municipal corporations, deduces the principle (§ 822): "The right of the owner to redeem from sales for assessments is favorably regarded by the courts and the statutes giving or extending this right are liberally construed."

If we hold that these certificates are a good tender, in redemption of property sold for unpaid assessments, we carry into further effect the indulgent purpose of the legislature, and what do we encounter in so doing?    Is the provision of the act of 1879, which makes it the duty of the selling officer to receive the certificates in payment of the assessments, for which the sales are made, as the appellant argues, a legislative construction of the law that no authority exists for the receipt of certificates after the sale has been made?    I cannot think so, and such a conclusion is not compelled.    As the law stood, under the act of 1874, it was open to doubt as to whether upon a sale of property for arrears of assessments, anything could be paid in by the purchaser except the currency of the country. The legislature settled that doubt (and thereby further evidenced its benevolence of purpose) by expressly authorizing the use of improvement certificates in making payments at the sales.    If, therefore, the act of 1879 does not limit or control the construction of the provision in the act of 1874 that these improvement certificates " shall be receivable at all times at par and accrued interest in payment of any assessment, etc.," do we find any objection to their use, for the purposes of redemption after sales, from the incorporation in the act of 1874 of those provisions of the act of 1886, which prescribe the proceedings for and upon sales and the manner of redemption?

This naturally brings us to the consideration of what I deem an important question in the case. What is the effect of the sale for unpaid assessments; whether as it concerns the property owner, the municipality, or the purchaser? The act of 1886 regulated the mode of procedure, by which the municipality might sell lands assessed for taxes and assessments, upon the neglect of their owners to discharge their liability therefor, and prescribed the terms upon which, within eighteen months after the sale, the property owner might redeem. It was passed in relation to the general city taxes; but being the law in force for that purpose, at the time when the sales under this special law of 1874 were to be made, its provisions were controlling upon the procedure to be adopted therefor, and equally so upon the manner in which the privilege of redemption was extended and might be availed of by the property owner. But it had no other force, nor was of other pertinence than as an act of procedure. So far as the act of 1874 conferred especial rights and privileges upon the owners of lands assessed and sold, this act of 1886 did not purport to, nor by the terms of the special act could, touch them. By the special law improvement certificates were made *at all times* receivable in payment of assessments. Now the assessment liens, to discharge which these certificates were available, continued such after a sale and until that sale was consummated by the deed or lease of the municipality. There is a significant provision in the ninth section of the act of 1886, to the effect that *after* the conveyance is executed to the grantee, upon the failure to redeem, " the lien or liens for which the same shall have been so sold, shall *thereupon* be cancelled." The caption of the act of 1886 states that it is " in relation to unpaid taxes, etc., and to collect the same, and to insure a more efficient collection of the same in the future." Such language indicates, or intimates, just what must have been considered by the legislature, and what we should hold to be the effect of the assessment sale; namely, that the sale is merely a mode of enforcement of the payment of the assessment. The purchaser at a tax sale has only acquired the lien of the municipality. He is the assignee,

in effect, of the assessment lien, and is thus protected as to his payment, until his inchoate rights are consummated by the execution of his deed or lease. As to the owner of the land, it is a step taken to enforce the collection of the assessment and a proceeding which would result in divesting him of his ownership, unless he avails himself of the privilege of redemption. The counsel for the respondents also directs our attention to the remark of Judge Cooley, in his work on taxation (§ 500), where he says that the sale is made by way of enforcing the duty which a person owes to the public. This court, in the case of *In re Clementi* v. *Jackson* (92 N. Y. 591), and recently in its second division, in the case of *McFarlane* v. *City of Brooklyn* (122 N. Y. 589), has regarded a sale for unpaid taxes as a mode of enforcement of the city lien for taxes. In the cases of *Williams* v. *Townsend* (31 N. Y. 411), and of *In re Clementi* v. *Jackson* (*supra*), the expressions in the opinions are unmistakeable as to the effect of the sale upon the assessment lien upon property. In the former case, Judge Davis holds that it is "merely an assignment of the lien of the tax, * * * and this lien continues till the owner makes the redemption, or the holder of the certificate takes title to the property in the prescribed form. It is, therefore, clear that the tax or assessment is not discharged by the sale and certificate." In *In re Clementi* v. *Jackson*, Judge Rapallo held that the payments made by a purchaser at a tax sale were not payments of the taxes. He said : " The payments made by him were no more a payment of the taxes than would a payment made by an assignee to an assignor of a bond, in consideration of the assignment thereof, be a payment of the bond."

Upon authority, therefore, as upon principle, we should hold that in this case the assessment liens still remained upon the land after the sale, undischarged, and, consequently, the usefulness of the improvement certificates to the property owner, as a medium of payment in redemption, continued unimpaired. The municipality is not prejudiced by such a construction, for it has been satisfied and has parted with its lien. The purchaser having paid, as in this case, his bid in certificates, of

.course, is not prejudiced. As matter of fact, it appears that upon all of the sales made under the act of 1874, payments have been made in improvement certificates. It is altogether most unlikely that they would be made otherwise, and intending purchasers at such sales would be careful to avail themselves of this medium of payment, which could be obtained from the contractors, or other holders, at prices much less than their par value. That competition at sales might be affected, or limited to those who possessed certificates with which to make payment, should not affect the question. The operation of a law cannot be affected by some imagined or possible result of its workings in some collateral direction. Besides, the plan of the statute was not to promote a market for the lands, when sold for unpaid assessments, but rather to provide for a substitute for money, generally available as a medium of payment to all affected by or interested in the performance of the work; which should be elastic enough to serve in payment of the contractors, in the first place, and to be receivable at all times in discharge of assessment liens and upon sales in enforcement of such liens.

The order appealed from should be affirmed and the writ of mandamus issue as ordered at the Special Term of the Supreme Court, with costs to the respondent of this appeal.

All concur, except ANDREWS, J., not voting, and EARL, J., dissenting.

Order affirmed.