In the Matter of the Estate of ALFRED C. UECK, Deceased. ELIZABETH STAEBELL, Appellant; COUNTY OF ERIE et al., Respondents.

2

Argued February 26, 1941; decided June 5, 1941.

*Louis W. Manchester* and *Francis L. Tauriello* for appellant. The purchase of the taxpayer's real property by the city of Buffalo or the county of Erie at a tax sale, pursuant to the statute, collected and discharged the tax. (*Armstrong v. County of Nassau*, 101 App. Div. 116; *United States v. Lawton*, 110 U. S. 146; *Town of Amherst v. County of Erie*, 260 N. Y. 361; *County of Oswego v. Foster*, 262 N. Y. 439; *People ex rel. McColgan v. Palmer*, 10 App. Div. 395; *Pereles v. Meyer*, 213 Wis. 232; *Armstrong Products Corp. v. Martin*, 192 S. E. Rep. 125; *Carrier Lumber & Mfg. Co. v. Quitman County*, 156 Miss. 396; *County Securities, Inc., v. Seacord*, 278 N. Y. 34; *City of New Rochelle v. Seacord*, 281 N. Y. 621; *Cary v. Koerner*, 200 N. Y. 253; *Getman v. Niferopulos*, 276 N. Y. 161; *City of Johnstown v. Wells*, 242 App. Div. 103; 275 N. Y. 623.) Section 212 of the Surrogate's Court Act imposes no obligation on the administrator to redeem decedent's real property from any tax sale thereof to the city of Buffalo or the county of Erie. (*Getman v. Niferopulos*, 276 N. Y. 161; *People ex rel. McColgan v. Palmer*, 10 App. Div. 395; *People ex rel. Quaranto v. Moynahan*, 148 App. Div. 744; 205 N. Y. 590; *Mongaup Valley Co. v. Orange Rod & Gun Club*, 253 App. Div. 465; 280 N. Y. 582; *Lindsay v. Fay*, 28 Wis. 177; *City of Johnstown v. Wells*, 242 App. Div. 103; 275 N. Y. 623.)

*Wortley B. Paul* and *John G. Lesswing* for John G. Lesswing et al., as executors of Frederick A. Mendlein, deceased, *amici curiæ*. The allowance of the claims for taxes as provided for in the decree was erroneous. (*Town of Amherst*

v. *County of Erie,* 260 N. Y. 361; *Getman* v. *Niferopulos,* 276 N. Y. 161; *Matter of Hunter* v. *Seery,* 206 App. Div. 19; *Wise* v. *Wedlake,* 217 App. Div. 210; *Village of Massapequa Park* v. *M. P. V. Sites,* 278 N. Y. 28; *Matter of Adler & Co.,* 76 App. Div. 571; 174 N. Y. 287; *Bassett* v. *Wheeler,* 84 N. Y. 466; *Matter of Preston,* 108 Misc. Rep. 535; *Matter of Terry,* 218 N. Y. 218; *County Securities, Inc.,* v. *Seacord,* 278 N. Y. 34; *City of Rochester* v. *Bloss,* 185 N. Y. 42; *Mongaup Valley Co.* v. *Orange Rod & Gun Club,* 253 App. Div. 465; 280 N. Y. 582; *People ex rel. Quaranto* v. *Moynahan,* 148 App. Div. 744; 205 N. Y. 590; *Mabie* v. *Fuller,* 255 N. Y. 194; *Hennepin Improvement Co.* v. *Schuster,* 66 Misc. Rep. 634.)

*Paul J. Batt, County Attorney* (*Genevieve Goergen* of counsel), for County of Erie, respondent. The Erie county taxes directed to be paid by the Surrogate are " taxes " within the meaning of subdivision 2 of section 212 of the Surrogate's Court Act. (*Town of Amherst* v. *County of Erie,* 260 N. Y. 361; *Matter of Gill,* 199 N. Y. 155; *Smith* v. *Cornell,* 111 N. Y. 554; *Matter of McClatchey,* 170 Misc. Rep. 696; *Wise* v. *Wedlake,* 217 App. Div. 210; *Matter of Babcock,* 52 Hun, 142; 115 N. Y. 450.)

*Edward J. Sullivan, Corporation Counsel* (*Howard H. Holmberg* of counsel), for City of Buffalo, respondent. The items described in respondent's claim decreed to be paid, are for taxes entitled to a preference under subdivision 2 of section 212 of the Surrogate's Court Act. (*Rubin* v. *Cottle,* 248 App. Div. 671; 273 N. Y. 544; *Matter of Clementi* v. *Jackson,* 92 N. Y. 591; *People ex rel. Oakley* v. *Bleckwenn,* 126 N. Y. 310; *City of Buffalo* v. *Cottle,* 252 App. Div. 920; 254 App. Div. 809; 278 N. Y. 536.) The taxes constitute a statutory liability of the deceased, expressly directed by section 212 of the Surrogate's Court Act to be paid from the estate. (*Rundell* v. *Lakey,* 40 N. Y. 513; *Matter of Gill,* 199 N. Y. 155.) Taxes assessed upon the property of the deceased previous to his death are entitled to a preference in order of their payment. (*Smith* v. *Cornell,* 111 N. Y. 554; *Matter of Babcock,* 115 N. Y. 450.)

CONWAY, J.    One Alfred C. Ueck had been the owner of a number of parcels of real property in the city of Buffalo, county of Erie.   Taxes assessed thereon were not paid by him and from time to time, over a period extending from 1926 to 1937, the properties were sold for non-payment of taxes at tax sales conducted both by the city of, Buffalo and the county of Erie.   Upon those sales, which occurred as to the same parcels year after year, the city of Buffalo and the county of Erie each obtained certificates of sale for some of the properties.

Ueck died, a resident of the city of Buffalo, county of Erie, on September 30, 1936.   At that time, both in the city and the county, taxes for the year 1936 had become liens.   Subsequent to his death his properties were again sold for the non-payment of taxes for the year 1936.

Section 212 of the Surrogate's Court Act provides:

" § 212.   Payment of debts.   Every executor and administrator must proceed with diligence to pay the *debts of the deceased* according to the following order:

" 1.   Debts entitled to a preference under the laws of the United States and the State of New York.

" 2.   Taxes assessed on property of the deceased previous to his death.

"  *     *     *

"4.   All recognizances, bonds, sealed instruments, notes, bills and unliquidated demands and accounts."

The authorities clearly indicate that taxes, properly assessed on property of the deceased prior to his death in a tax district of which he was a resident, were his personal debts.   (*Smith* v. *Cornell*, 111 N. Y. 554, 557; *Matter of Gill*, 199 N. Y. 155; *Village of Lynbrook* v. *Otto*, 266 N. Y. 308; *Village of Massapequa Park* v. *Massapequa Park Villa Sites, Inc.*, 278 N. Y. 28, 31.   Cf. Village Law [Cons. Laws, ch. 64], §§ 126, 133.)

This proceeding was commenced by the administrator *de bonis non* of the goods, chattels and credits of Alfred C. Ueck, deceased, to obtain a decree which would determine the amount of unpaid taxes, penalties and interest which

were liens upon decedent's property at the time of his death, and the right to priority of payment of them over claims against the estate theretofore adjudicated or allowed under subdivision 4 of section 212, *supra*.

A determination of those questions depends upon whether the real estate taxes upon decedent's properties were paid or discharged, *as far as decedent was concerned*, when the properties were sold for non-payment of taxes and purchased at the tax sales by the city of Buffalo and the county of Erie.

The learned Surrogate decided that, despite the sale of the properties for non-payment of taxes and the delivery of tax sale certificates therefor, there had been no payment or discharge of the taxes when the sales were to the city of Buffalo or the county of Erie, although there was such payment and discharge when the sales were to individuals or private corporations, since then the municipalities had been " paid in full." In other words, the Surrogate held that the taxes were still " assessed " on decedent's properties although such properties had been sold to pay the taxes, if the purchaser were the taxing municipality.

The administrator was thereupon directed to pay to the city of Buffalo and the county of Erie " the amounts *paid by them*, and *each of them*," for specified certificates of sale, together with interest on the certificates at the rate of twelve per centum per annum and all additional expenses. The decree of the Surrogate was affirmed by the Appellate Division.

From this holding, curious results may ensue. For instance, there is *added* to real estate *taxes*, by reason of the enactment of subdivision 2 of section 212 of the Surrogate's Court Act, a substantial penalty in the event of the death of an owner, where, upon a prior sale of the property affected, for non-payment of taxes, a purchase thereof has been made by the taxing municipality, but not if made by any other person. Again, the taxing municipality may purchase real estate at tax sales year after year, await the owner's death, without taking any step to terminate his equity of redemption or to foreclose the tax sale certificate,

and then collect from his estate all the *taxes* assessed, with twelve per centum annual *penalty*, for an indefinite number of years. We find no Statute of Limitations restricting such procedure. The duty imposed upon the executor or administrator is to pay " taxes assessed on property of the deceased previous to his death." In other words, whether a decedent leaves an estate for relatives or creditors beyond the first two classes mentioned in section 212 of the Surrogate's Court Act, *supra*, may depend on the identity of the purchaser at a sale or sales of his realty for non-payment of taxes. Such a startling result requires a careful consideration of the policy of the State as evidenced by applicable statutes and an examination of the Buffalo City Charter (Local Law No. 4 of 1927, published in Local Laws of 1932, p. 21) and the Erie County Tax Law (L. 1884, ch. 135, as amd. L. 1909, ch. 383; L. 1933, ch. 664; L. 1934, chs. 299, 340).

The general policy of the State is to collect unpaid real estate taxes by levy upon the personalty of the owner, when that is permitted by section 71 of the Tax Law (Cons. Laws, ch. 60), or by a sale of the property. (Tax Law, arts. 6 and 7.)

We are not here concerned with the sale of tax *liens* upon the property of the owner. Such a sale is permitted only when the Legislature grants such power in express terms. That was pointed out in *County Securities, Inc.*, v. *Seacord* (278 N. Y. 34, 39), where it was said: " The general Tax Law of the State provides for the sale of the *property* in the enforcement of tax liens. (Tax Law, art. 7.) That law applies in all cases except where the Legislature by express language has provided a different method to be employed in certain subdivisions of the State." No such grant of power has been made to the city of Buffalo or the county of Erie.

As further evidencing the general policy of the State, we find that section 50, subdivision 2, of the Tax Law provides as follows: " The board of supervisors in any county of the state shall when examining the assessment-rolls of the several

tax districts of the county, as above provided, exclude from the tax rolls of said districts, to be prepared by said board, such parcels of real property as have been struck down to the county at a tax sale and not redeemed as provided in section one hundred and fifty-two of this chapter. The county treasurer shall annually between the date of the tax sale and the first day of December next succeeding, prepare and submit to the board of supervisors a list of all such lands so struck down to the county in any year and still remaining unredeemed. No such properties shall be so excluded from said tax rolls except by a resolution of said board adopted at an *annual* meeting by a vote of a majority of the members thereof. Whenever such real property is so excluded from the tax rolls by the board, the total of the assessed valuations of the real estate of the several tax districts, as the same appear on the completed tax rolls, shall be the aggregate valuation of the taxable real estate in the county."

A tax district means, " unless otherwise herein provided, a city or town of this state." (Tax Law, § 2, subd. 4.)

Section 153 of the Tax Law provides:

" § 153. Redemption of real property stricken from tax-rolls. The real property struck down to a county at said tax sale and omitted from the tax-rolls as provided in section fifty of the chapter shall not be subject to further sale after having been once so sold for taxes. The real property so omitted from the tax-rolls may be redeemed by the owner, occupant or any other person, provided the county has not acquired a title in fee to such real property, upon the payment to the county treasurer for the use and benefit of the county of a sum equal to the gross amount of the taxes, expenses of such sale, penalty and interest thereon, together with the tax and interest thereon which would ' have been due on said real property had it been taxed during each of the years it was so omitted from the tax-rolls. The said taxes for each of the years during which said real estate is so omitted from the tax-rolls shall be computed on the basis of the assessed valuations returned on said real

property by the assessors of the several tax districts and at the rate fixed by the board of supervisors as the tax rate for the tax district within which said real estate is situated. The county treasurer shall apportion the sum, including interest, so collected between the county and said tax district in the same manner as though said property had not been omitted. The amount of taxes and interest so collected and apportioned to said tax district, including special district taxes and interest thereon, shall be forthwith paid to the said tax district."

In addition, section 95 of the Tax Law provides: " This article shall apply to all the cities or towns of the state, in so far as the matters herein provided for do not conflict with the special and local laws of such cities or towns."

The article referred to is article 4, entitled " Collection of Taxes."

These are applicable statutes, therefore, unless they conflict with provisions of the Buffalo City Charter.

On the other hand, Tax Law, section 160, provides:

" § 160. Article not to relate to certain cities. This or the preceding article shall not affect any law relating to the sale of real estate for taxes in any city."

The articles of the Tax Law referred to are articles 6 and 7, which relate to the sale of lands for unpaid taxes by the State and by County Treasurers. Those articles, therefore, do not affect any provision of the Buffalo City Charter.

We turn now to the applicable statutes affecting, first, the city of Buffalo and then the county of Erie.

Section 349 of the Charter of the City of Buffalo, prior to its amendment in 1935, read as follows:

" § 349. Tax sale bonds. The city shall have power to issue bonds, payable in not exceeding five years, to raise money sufficient to *pay* for its purchase at the annual sale of unpaid city taxes and assessments, which money shall be apportioned to the *credit* of *each tax* and assessment for which sales were made. All moneys received on the redemption of lands struck off to the city at such sales or for assignments of certificates of sale shall constitute a fund

for the payment of such bonds which fund shall be known as the tax loan fund. If said fund is insufficient for the payment of such bonds as they mature, refunding bonds may be issued for the deficiency or the amount of the deficiency may be provided in the budget as the council may determine."

The section was amended by Laws of 1935, chapter 350, effective April 8, 1935, to read as follows:

" § 349. Tax revenue bonds and certificates of indebtedness. The city shall have power to borrow sums of money, from time to time, on its credit by the issuance of certificates of indebtedness or revenue bonds in anticipation of the collection of taxes for amounts actually contained, or to be contained in the taxes for the year when such certificates of indebtedness or revenue bonds are issued, but not to exceed in amount the amount of such revenues. Such amount may be obtained by the issue and sale of such certificates of indebtedness or revenue bonds payable in not more than five years from the date of issue thereof, which certificates of indebtedness or revenue bonds shall be payable out of the proceeds of the tax levy in anticipation of the collection of which such certificates of indebtedness or revenue bonds were issued. All moneys received or collected from the tax levy in anticipation of the collection of which such certificates of indebtedness or revenue bonds were issued shall constitute a fund for the payment of such certificates or revenue bonds, which fund shall be known as the tax loan fund. Such certificates of indebtedness or revenue bonds may be renewed in whole or in part from time to time, whenever the revenues applicable thereto are insufficient to pay the same, provided that the last maturity of any such renewal shall not be more than five years from the date of the original loan, and provided further that at the time of such renewal or renewals the aggregate amount of such certificates of indebtedness or revenue bonds then outstanding shall not exceed the amount of such uncollected taxes. Any of such certificates of indebtedness or revenue bonds or renewals thereof, not paid, may be

refunded within five years by the issuance of bonds, or included in the budget as the council may determine."

An examination of the Common Council Proceedings of the City of Buffalo for December 11, 1934, December 26, 1934, February 19, 1935, and March 5, 1935, reveals that the Corporation Counsel of the City of Buffalo was directed to prepare proposed legislation to be submitted to the Legislature of the State for the purpose of eliminating annual tax sales and that he transmitted to the Council under date of January 29, 1935, such proposed legislation amending the Charter of the City of Buffalo " so as to eliminate annual tax sales." That proposed act affected sections 349, 596, 611, 613, 614, 616, 617, 618, 619, 621, 622, 623, 624, 625, 626, 627, 628, 640, 641, 643, 643-a, 644, 645, 646, 648, 649, 651, 652, 653, and proposed to repeal sections 610, 612 and 615. It will be found printed in full in Minutes No. 4, Item 49, Common Council Proceedings of the City of Buffalo, February 19, 1935.

On March 5, 1935, the Council, after consideration of the proposed legislation embodied in Item No. 49 of the Proceedings of February 19, 1935, *supra*, adopted the following resolution:

" That the proposed act, in so far as it eliminates annual tax sales be, and the same is hereby received and filed."

" That the proposed act, in so far as it relates to the change in the *form* of tax revenue bonds to be issued in anticipation of the collection of taxes levied be, and the same is hereby approved, and that the Corporation Counsel be authorized and directed to prepare an act and submit it to the Legislature, amending Section 349 of the charter of the city of Buffalo and related sections, so as to provide for a *form* of tax revenue bonds and certificates of indebtedness payable out of the proceeds of the tax levy in anticipation of the collection of which such certificates of indebtedness or revenue bonds are issued."

After April 8, 1935, the city no longer paid for its purchases by a charge to the " tax loan fund." It received a certificate of sale for its purchase and the certificate was

retained in the department of the treasury as an asset. (See Buffalo City Charter, § 614, as amended, *infra*.) The payment of the tax was from tax revenue bonds and certificates of indebtedness. The owners of such bonds and certificates were, of course, entitled to be subrogated to the rights of the city under the tax sale certificates.

Section 610 provided as follows:

" § 610. Collection enforced by sale. The collection of every assessment and of every tax upon real estate with the interest and additions remaining unpaid may be enforced by a *sale of the real estate* by the board of assessors, \* \* \*." (Amended April 11, 1935, by changing " board of assessors " to " city treasurer," by L. 1935, ch. 370.)

Section 611 provided as follows:

" § 611. Assessors' notice of sale. The board of assessors shall cause to be published \* \* \* a notice that said real estate will at the office of the board of assessors on a date specified therein and on the succeeding days, *be sold* at public auction to the highest bidder, *to pay* the taxes, additions, interest, fees and expenses which may remain unpaid at the time of such sale." (Amended April 11, 1935, by changing " board of assessors " to " treasurer," by L. 1935, ch. 370.)

Section 612 provided as follows:

" § 612. Method of sale. At the time and place specified in said published notice, one of the board of assessors designated by the board shall commence the sale of said real estate at auction to the highest bidder and shall continue such sale from day to day until the whole of said real estate is sold. Said *assessor* shall bid in for the *city* all parcels of real estate which shall not be purchased by any other person *for an amount sufficient to pay* the taxes and assessments and all accrued additions, interest, fees and expenses of sale for which the land is to be *sold*.

" No parcel of land shall be *sold* for less than the aggregate amount of such taxes, assessments, additions, interest, fees and expenses." (Amended April 11, 1935, by substituting " treasurer " or " deputy treasurer " for

" assessors " or " one of the board of assessors designated by the board," by L. 1935, ch. 370.)

Section 614 required purchasers at tax sales to pay the amount of their bids to the city treasurer within ten days after the sale and provided that a purchaser should receive " a certificate in writing, which shall contain a description of the real estate purchased, the amount *paid therefor*, the date of the sale and that the same was *sold* for unpaid taxes and assessments * * *." This section further provided in the last paragraph: " The city shall *pay* for its purchases by a charge of the amount of its bids to the tax loan fund referred to in section three hundred forty-nine of this act and like certificates of sale shall be executed to the *city for its purchases*, which certificates shall be retained in the department of assessment, and the city shall, for all the purposes of this act, be deemed to be the owner and holder of such certificates of sale."

This section was amended by the Laws of 1935, chapter 350, effective April 8, 1935, by changing " any one of the assessors " to " treasurer " and by changing the last paragraph of the section to read as follows: " Certificates of sale shall be executed to the city for its purchases, which certificates shall be retained in the department of the *treasury*, and the city shall, for all the purposes of this act, be deemed to be the owner and holder of such certificate of sale."

The purchaser, whether the city or other person, was still required to pay its respective bid to the City Treasurer within ten days after the sale, and the certificates of sale of the city, executed to it for its purchases, were to be retained in the treasury as city assets. The payment was a matter of bookkeeping, within the terms and contemplation of section 349 of the Charter both before and after its amendment. (Cf. *United States* v. *Lawton*, 110 U. S. 146, 150.)

Section 616 provided as follows:

" § 616. Effect of certificate of sale. The purchaser, *including the city*, his legal representatives or his or its

assigns, upon receiving such certificate of sale by virtue thereof and of this act, may lawfully hold and enjoy for his, its and their own proper use and benefit, the real· estate described in such certificate, unless the same is redeemed as hereinafter provided."

Section 625 provided as follows:

" § 625. Recording certificates and conveyances. Every certificate of sale and every such conveyance so executed in pursuance of this act may be recorded in the same manner and with like effect as a deed acknowledged or proved before any officer authorized by law to take proof and acknowledgment of deeds."

Section 619 of the City Charter provides that after the expiration of one year from the date of sale, the holder of a tax certificate of sale may serve a notice upon the owner requiring him to redeem the property. " Such notice * * * shall state briefly * * * the amount for which the property was *sold* * * * the last day of redemption, which shall be not less than three months from the day of service of the notice and ·not prior to two years from the date of such sale * * *." This is one method of determining the right of redemption, although the holder of a tax certificate may instead maintain a foreclosure action to sell the property under section 640 of the Charter.

Section 640 provided as follows:

" § 640. Foreclosure action authorized. Instead of taking a conveyance, pursuant to this act, the holder, *including the city*, of a certificate of sale heretofore executed by the comptroller or one of the assessors of the city,· or hereafter executed by an assessor, pursuant to this act, may recover the *amount paid therefor* as in said certificate mentioned, with all interest, additions and expenses allowed by law, and for that purpose may maintain an action in the supreme court or in the county court of Erie county to sell such real property, jurisdiction of said courts in such action being hereby conferred." (Amended April 11, 1935, substituting " treasurer " for " assessor," by L. 1935, ch. 370.)

The italicized portions of this section establish conclusively that payment for the tax sale certificates was made by the city at the time of purchase or within ten days thereafter under Charter section 614. It will be noted that the only amount recoverable in the foreclosure action is the amount " paid therefor as in said certificate mentioned." It would have been idle for the Legislature to give this right of action to the holder, " including the city," unless the city had paid the amount mentioned in the tax sale certificate. Moreover, the tax sale certificates, which are exhibits before us, recite the exact amount paid by the city of Buffalo upon each purchase.

A sample of the tax sale certificate, excluding the description of the particular piece of property, is as follows:

" TAX SALE CERTIFICATE

\* \* \* \* \*

" I hereby certify, That pursuant to provisions of the Charter of the City of Buffalo, I have this day sold at Public Auction to City of Buffalo for the sum of NINETY SEVEN AND 25/100 Dollars, the above-described parcel of land, such sale having been made for Taxes and Assessments upon such parcel of land contained in the general tax rolls of the city for the year 1932–1933 unpaid.

" I further certify, That such parcel of land was sold for the non-payment of the following taxes and assessments, viz.:

" Amount Paid

" General City Tax, 1932–1933, and local
assessments, if any, added thereto, plus
expense of publication                          $97 . 25 "

The form of tax sale certificate was the same before and after the Charter amendments of 1935.

We now examine the applicable provisions of the Erie County Tax Law. The original special tax law for Erie county is found in the Laws of 1884, chapter 135. That act was amended by the Laws of 1909, chapter 383, Laws of 1933, chapter 664, and Laws of 1934, chapters 299 and 340. These are the only amendments applicable here.

Section 13 of the Erie County Tax Law provided that when the tax remained unpaid for six months from the first day of May, the County Treasurer should "proceed to advertise and sell such real estate * * * for the *payment* of such tax, fees and interest and the expenses of such sale."

Section 14 of the Erie County Tax Law, prior to the amendment by chapter 299, Laws of 1934, effective April 25, 1934, read as follows: "The said county treasurer shall immediately after the first day of November in each year cause to be published * * * a notice that the said real estate will * * * *be sold* at public auction * * * *to discharge the tax*, fees, interest and charges aforesaid, which may be due thereon at the time of such sale. * * *." (L. 1909, ch. 383.)

After the amendment by chapter 299, Laws of 1934, section 14 read in part as follows: "The said county treasurer shall immediately after the first day of November in each year cause to be published * * * a notice to the public * * * stating that * * * the real estate upon which taxes are unpaid for the current year *will be sold* at public auction * * * *to discharge the tax*, fees, interest and charges which may be due thereon at the time of such sale, * * *."

Section 15 was amended by chapter 383 of the Laws of 1909, and was not later amended until April 17, 1937. (L. 1937, ch. 239.)

The amendment of 1909 provided:

" § 15. On the day of sale specified in said notice, the said county treasurer shall commence the sale of said real estate and he shall continue the same from day to day until so much of each parcel shall be sold as will be sufficient to *pay* all the taxes, fees, interest and charges which may be due thereon at the time of such sale. In all cases where no bid shall be made on a lot or parcel of land so offered for sale, for an amount or sums sufficient to *pay* the said tax, fees, interest and charges of sale, or if any purchaser of any land sold pursuant to the provisions of this act

shall neglect or refuse to *pay* the amount of his bid or bids within the time prescribed, said premises shall be deemed to have been *sold* to and *purchased* by the county of Erie. The treasurer may make certificates of sale of all lands so bid in by or sold to the county describing the lands purchased and such certificates shall be subject to the same right of redemption as those purchased by individuals, and if the land so sold shall not be redeemed the county treasurer's deed thereof shall have the same effect and become absolute in the same time on the performance of all conditions as in the case of sales and conveyances to individuals. The treasurer may sell and assign any certificate of sale of land bid in by or sold to the county at any time before the expiration of the period of redemption if deemed for the best interest of the county upon receiving payment of the amount necessary to reimburse the county, the purchaser or assignee thereof to have all the rights and assume all the liabilities of the original purchaser. * * * the certificate of the county treasurer affixed to any assessment roll filed in his office by the tax collector of any tax district that any taxes thereon remain unpaid shall be presumptive evidence of that fact, * * *."

The tax sale certificates for property purchased by the county of Erie were considered by it as assets and the record discloses that they were used as collateral in borrowing money. The evidence is undisputed that it was the custom of the County Treasurer to borrow in anticipation of the collection of taxes up to the date when the tax sale was to be held but that after the sale he borrowed on the pledge of the tax sale certificates owned by the county. Not only the words of the statutes but the conduct of the county officials indicate that the latter considered a tax as paid when the property affected was sold for non-payment of taxes.

The policy of the State and of the political subdivisions affected indicates clearly that when the decedent's real estate was sold and bid in by the city of Buffalo or the county of Erie for non-payment of taxes, there was payment and

discharge of such taxes and that the purchaser, whether city or county, became the inchoate titleholder of the land, evidenced by the tax sale certificate.

Entirely apart from the statutes, which lead inevitably to this conclusion, we have the decision of this court recently in *Town of Amherst* v. *County of Erie* (260 N. Y. 361, 374, 375), where it was said:

" An examination of the statute discloses that the whole plan outlined in the act vests the entire matter of the collection of delinquent taxes in the county and in the Treasurer thereof. The statute provides the machinery, prescribes the practice and vests the proceeds in the county. In the event of failure to sell, the title, by operation of law, is vested in the county. Nowhere in the statute can be found any provision for turning over to the towns, the money collected by the County Treasurer or any other consideration for the vesting of the title of the property taxed in the county in the event of failure to sell, unless it is required to reimburse the towns as plaintiff contends. As the county is entitled to twelve per cent per annum on the amount of each tax and a five per cent fee in addition, it receives a consideration and has a financial interest in addition to the amount of the tax. The amount of a particular tax is determined by multiplying the assessed valuation of the property by the tax rate. The assessed valuation is supposed to be the real value of the property assessed. We know, of course, that in actual practice it is less. However, it is fair to assume that the value of the property assessed is much more than the tax assessed thereon for any one year. The Legislature might well have had in mind when it provided that the county should collect all returned taxes and that the ' premises shall be deemed to have been sold to and purchased by the county of Erie ' when not sold to a purchaser at the tax sale, that the property would ultimately be sold for at least the tax assessed against it and the interest, fees and expense of collection; that in placing that burden on the county, the Legislature had expected it would ordinarily receive in the end the amount

of the returned taxes, the twelve per cent per annum interest and the five per cent fee in addition.

" A tax sale was held in November, 1931, and the parcels of land were sold for delinquent taxes. Thereafter the County Treasurer wrote the words ' tax sold by treasurer ' against each parcel so sold to the county and the county thereafter carried those parcels as ' assets ' upon its books. The county had done everything that it could do prior to the commencement of this action to perfect its title to the parcels of land in question under the provisions of the special statute. The title which it had was inchoate as the statute requires further proceedings to perfect such title and make it absolute."

The respondents rely in part upon four cases in this court and urge upon us certain language found in the opinions in those cases. An examination of them, however, discloses that the decisions were based upon applicable statutes which do not contain the language used in the Charter of the city of Buffalo or the Tax Law of the county of Erie and it must be borne in mind that " the rights of all parties connected with the purchase and sale of property to raise the taxes imposed upon it, are created and defined by statute." (*McFarlane* v. *City of Brooklyn*, 122 N. Y. 585, 590.)

Thus, in *Williams* v. *Townsend* (31 N. Y. 411, 416) the mortgagee, by the terms of the bond and mortgage, had the right to pay and discharge unpaid taxes and thereupon to collect the amount so paid, by suit upon the bond, or by foreclosure of the mortgage. Instead, he purchased the premises at a tax sale and took the certificate of purchase in the name of an agent. The court said: " * * * the purchase at the tax sale did not operate to discharge the assessment and deprive the plaintiff [mortgagor] of his right of redemption under the statute." (Insertion supplied.) Moreover, the sale was made under the provisions of the Charter of the city of Buffalo as revised by chapter 99 of the Laws of 1856, which did not have in it the provisions of the present charter. Under that act sales were made " for

the shortest term of years for which any person will take the premises," and in the event that no bid was made were required to be " struck off to the city for the term of one hundred years." The change to the language of the present charter militates against the position of the respondents.

In *Matter of Clementi* v. *Jackson* (92 N. Y. 591) an act (L. 1882, ch. 363) had been passed validating certain taxes in the city of Brooklyn which were invalid because of the omission of the assessors to verify the assessment rolls as required. It was there held that the statute validated only the taxes and not tax sales made, because of non-payment of the invalid tax, prior to the passage of the validating act. As the court said: " * * * the purchaser acquired no right or title to respondent's property by virtue of those sales or of the leases subsequently granted." By the act the void taxes were made valid only on condition that property owners might discharge them by paying the reduced amount specified in the act. " It could not have been the intention of the act that if the city had attempted to enforce payment of these void taxes, by sales and leases, the validation should stand and the land owners be deprived of the provision for their benefit, which was one of the terms upon which the Legislature cured the defect in the assessment of the taxes " (p. 594).

In *McFarlane* v. *City of Brooklyn* (*supra*) the plaintiff purchased at sales for the non-payment of taxes and received certificates therefor, each of which recited that at the expiration of two years he would be entitled to a lease of the lot sold for the term of one hundred years, unless within the two-year period the premises should be redeemed or irregularity be discovered in the proceedings prior to the sale. The taxes for which the properties were sold were void. The plaintiff sought the amount paid by him with interest. Under the terms of the act it was decided that he was not entitled to interest.

In *People ex rel. Oakley* v. *Bleckwenn* (126 N. Y. 316) there was involved a sale for unpaid assessments. The

statute there involved, chapter 656 of the Laws of 1886, provided that *after* the conveyance had been executed to the grantee, upon the failure to redeem, " the lien or liens for which the same shall have been so sold shall *thereupon* be cancelled." The court properly said " that the sale is merely a mode of enforcement of the payment of the assessment. The purchaser at a tax sale has only acquired the lien of the municipality " (p. 316). In other words, the liens continued by the terms of the statute until the expiration of the redemption period.

The administrator, in the instant case, effected a sale of one parcel of land of decedent after the first and second mortgagees discharged their mortgages in order that a clear title might be conveyed to a purchaser. Thereafter, on October 6, 1937, the learned Surrogate directed that these mortgagees be subrogated, as their interests might appear, to all rights of priority which the city of Buffalo and the county of Erie and the purchasers of tax sale certificates might have with reference to taxes which became liens on the premises prior to decedent's death and that, for any balance after collection by reason of such subrogation, the mortgagees should come in as general creditors. The decree from which this appeal is taken recites that the administrator paid from the purchase price received on said sale to the purchasers and holders of several tax sale certificates of said premises on the tax sales of the city of Buffalo the sum of $1,674.83 and to the holders of tax sale certificates of county tax sales the sum of $505.71, and that thereupon *all* of the city and county tax sale certificates were canceled. In view of the recited facts there is nothing to which the mortgagees could be subrogated.

The orders should be reversed, with costs to the appellant, and the matter remitted to the Surrogate's Court with directions to proceed in accordance with this opinion.

LEWIS, J. (dissenting). The procedure by which the county of Erie and the city of Buffalo may collect delinquent taxes is prescribed respectively by chapter 135 of the Laws of 1884, as amended, and by the provisions of the Buffalo

City Charter. If a taxpayer's delinquency persists there comes a time when, in aid of the collection of the tax, the county or city — as the case may be — is authorized by the Legislature to conduct a tax sale of the premises involved. The procedure prescribed to bring about such a sale is definite and employs language which includes the words " sale " " purchase " and kindred terms which, when given their literal meaning, import a grant or transfer of title. According to the view of a majority of the court the problem presented by this appeal is to be resolved by giving a literal interpretation to such words and thus to make a tax sale conducted under the statutes here involved legally effective as a present grant or transfer of title from the delinquent taxpayer to the municipality to which the tax is due.

I do not believe the Legislature, by the language employed in either statute, contemplated that whenever a tax sale results in a municipality becoming the " purchaser," all rights of the delinquent taxpayer in the premises involved are thereby cut off. A tax sale conducted under either statute does not endow the county or city, immediately after it has become such a purchaser, with the right in turn to convey the premises involved free of the lien. Each statute accords to the delinquent taxpayer the right within a prescribed period to redeem the property free from the lien of the tax by payment of an amount which includes the original tax debt.

Thus it is made clear that a tax sale is provided by the Legislature as a form of governmental action to be set in motion only as a means by which the collection of a delinquent tax may be enforced. This statement accords with the view expressed in *People ex rel. Oakley* v. *Bleckwenn* (126 N. Y. 310), where it was said (p. 317): " This court, in the case of *In re Clementi* v. *Jackson* (92 N. Y. 591), and recently in its second division, in the case of *McFarlane* v. *City of Brooklyn* (122 N. Y. 589), has regarded a sale for unpaid taxes as a mode of enforcement of the city lien for taxes." The tax, as a debt of the owner of the property subject to its lien, is not extinguished until after the statu-

tory period of the taxpayer's right of redemption has passed. That period of redemption commences when the statutory notice thereof has been given, or on the date of the sale. (Buffalo City Charter, §§ 618, 619, 621, L. 1909, ch. 383, §§ 20, 21; see, also, *Mabie* v. *Fuller*, 255 N. Y. 194.)

The view which I have attempted to express is more clearly stated in the ruling by this court in *People ex rel. Oakley* v. *Bleckwenn* (*supra*). There, upon the determination of a decisive issue in the case, GRAY, J., writing for the court, posed the question: " What is the effect of the sale for unpaid assessments * * * ? " In answering that query it was said (p. 316): " The purchaser at a tax sale has only acquired the lien of the municipality. He is the assignee, in effect, of the assessment lien, and is thus protected as to his payment, until his inchoate rights are consummated by the execution of his deed or lease. As to the owner of the land, it is a step taken to enforce the collection of the assessment and a proceeding which would result in divesting him of his ownership, unless he avails himself of the privilege of redemption."

At an earlier date this court had given what impresses me as a definite answer to the question which is now before us. In *Williams* v. *Townsend* (31 N. Y. 411) the question was whether, under the Buffalo City Charter, a purchase at a tax sale and the taking of a certificate showing such purchase, amounted to a discharge of the tax involved. It was there said (p. 413): " In all cases of sales for taxes the owner of the land is clothed by law with this right of redemption; and the tax together with the expenses of the sale remain a lien on the premises assessed, * * * until the redemption or payment to the Treasurer is made. The effect of the sale is therefore merely an assignment of the lien of the tax and the expenses then incurred, enhanced by the additional percentage; and this lien continues till the owner of the land makes the redemption, or the holder of the certificate takes title to the property in the prescribed form. *It is therefore clear that the tax or*

*assessment is not discharged by the sale and certificate.*"
(Emphasis supplied.)

With equal definiteness the same answer was made for the court by RAPALLO, J., in *Matter of Clementi* v. *Jackson* (92 N. Y. 591, 595): " We do not think that the payments made by the purchaser were payments of the taxes. He did not make the payments for the benefit of the relator, or in her behalf, nor for the purpose of discharging the property from the lien of the taxes, but made them in his own behalf, for the purpose of acquiring an interest in the property by virtue of the sales made by the city to enforce that lien, in consequence of the nonpayment of the taxes and penalties. The payments made by him were no more a payment of the taxes than would a payment made by an assignee to an assignor of a bond, in consideration of the assignment thereof, be a payment of the bond."

Accordingly, I dissent, and vote to affirm.

LOUGHRAN, FINCH, RIPPEY and DESMOND, JJ., concur with CONWAY, J.; LEWIS, J., dissents in opinion in which LEHMAN, Ch. J., concurs.

Ordered accordingly.