Jasen, J.
(dissenting). Today, this court holds that the acquisition of tax sale certificates by Erie County and the City of Buffalo "purchased” at a tax sale extinguished the defendant taxpayer’s personal liability for delinquent real property taxes. I do not agree.
Critical to the court’s determination in Matter of Ueck (286 NY 1), which the majority finds dispositive of this case, was the court’s interpretation of the language employed in the Erie County Tax Law and the Buffalo City Charter to describe a tax sale conducted to collect delinquent taxes. Interpreting this language literally, the Ueck court held that purchase of a tax sale certificate resulted in the transfer to the purchaser of inchoate title to the underlying property.
At the outset, I view Ueck as having been wrongly decided. *19 By literally interpreting the statutory language contained in the Erie County Tax Law and the Buffalo City Charter, the Ueck court clothed a tax sale wih the legal effectiveness of an immediate transfer of title from the taxpayer to the tax district. Because of the transfer of what it termed "inchoate” title, the Ueck court held that a taxpayer’s personal liability for delinquent real property taxes was discharged upon the tax district’s purchase of a tax sale certificate. (286 NY, at pp 17-18.) In reality, however, the tax district’s purchase of a tax sale certificate had no such effect.
No passage of title, choate or inchoate, occurred upon this event. Certainly no one would contend that the tax district which purchased a tax sale certificate had the power to convey the affected property to a third party. Both the Erie County Tax Law and the Buffalo City Charter afforded the taxpayer a period of time in which to redeem the property "purchased” at the tax sale. As a result, it is clear that the delinquent taxpayer’s property encumbered by a tax lien and "purchased” at a tax sale by the tax district remained the property of the taxpayer until expiration of the redemption period and foreclosure of the lien. (Matter of Ueck, 286 NY, at pp 21, 22 [Lewis, J., dissenting opn].) In essence, the tax sale resulted merely in the assignment of the tax lien. (Williams v Townsend, 31 NY 411.) This event, in my view, is insufficient to extinguish a delinquent taxpayer’s personal liability.
As a practical matter, the majority’s holding permits an owner of real property to reap the commercial benefits of such ownership and yet avoid its accompanying tax consequences. In the present case, defendant Cargill failed to pay its real estate taxes for the years 1970-1974 — a sum amounting to more than $700,000. During this entire period, Cargill continued in possession and control of the property, and its grain elevators located on this property did a gross business in excess of $3,000,000. After having avoided payment of its delinquent taxes for these years, Cargill began, in 1974, to abandon the property, taking with it much of its valuable equipment. To hold as the majority does that the purchase of tax sale certificates extinguishes a delinquent taxpayer’s personal liability leaving the purchasing tax district with recourse only against the now abandoned and commercially worthless property defies both logic and equity. I would overrule Matter of Ueck.
Short of overruling Ueck, I believe that, today, a literal *20 interpretation of the Erie County Tax Act and the Buffalo City Charter no longer requires the result reached by this court over 35 years ago in Ueck.
In the years since this court’s decision in Ueck, the Erie County Tax Law has been amended, resulting in significant changes in its provisions. (L 1942, ch 812, as amd by L 1969, ch 682.) For example, in regard to the nature of a tax sale, the county law formerly provided: "In the event that there is no purchaser for any parcel of land so offered for sale * * * such premises shall be deemed to have been sold to and purchased by the county of Erie.” (§ 7-7.0 [emphasis added].) In contrast, it now utilizes the term tax certificate in place of the terms parcel of land and premises. (§ 7-6.0.)
Similarly, the county law interpreted by this court in Ueck provided for the issuance of "certificates of sale of all lands so bid in by or sold to the county, describing the lands purchased”. (§ 7-8.0 [emphasis added].) As amended, this section now speaks in terms of tax certificates, rather than land sold to the county (§ 7-7.0), and of tax certificates which describe the land affected rather than purchased. (§ 7-7.0.) Although the county law once provided that a purchaser at a tax sale purchases real estate (§ 7-12.0), it now provides that it is a tax lien which is purchased, and not real estate. (§ 7-11.0.)
Finally, in regard to redemption, while the predecessor of today’s Erie County Tax Act considered in Ueck provided that if land sold was not redeemed the purchaser would be issued a deed (§ 7-8.0), the act now provides for issuance of a deed "[i]f the amount of taxes on the land so affected by the sale of a tax certificate shall not be paid”. (§ 7-7.0 [emphasis added].) The right of redemption itself, having been formerly characterized as existing in real estate sold for taxes (§ 7-14.0) is now spoken of as existing in real estate affected by tax certificates sold. (§ 7-13.0.)
In light of these amendments, even a literal interpretation of the present Erie County Tax Act no longer necessitates a holding that a taxpayer’s personal liability for delinquent taxes is extinguished upon a tax district’s acquisition of a tax sale certificate. It is abundantly clear from the present statutory language that a purchaser of such a certificate is intended to receive only a lien as opposed to inchoate title to the affected property. This conclusion is in accord with our recent unanimous decision in Matter of County of Nassau (Gelb—Siegel) (24 NY2d 621), in which we, distinguishing the statu *21 tory language considered in Ueck, held that, pursuant to the Real Property Tax Law, a purchaser of a tax sale certificate "acquired only a lien interest in the subject property.” (Id., at p 626.) I conclude, therefore, that a delinquent taxpayer’s personal liability should not be extinguished upon the "purchase” by the county of a tax sale certificate.
With respect to the Buffalo City Charter, although many of the provisions interpreted by this court in Ueck remain the same, the city has since that time adopted title 3 of article 11 of the Real Property Tax Law. (Resolution 185, Proceedings of the Council, City of Buffalo, 1970, Part II, p 2042.) This title, which establishes an in rem foreclosure procedure for tax districts holding their own tax sale certificates, provides in its first section: "Ownership of a tax lienor of a tax sale certificate or of any other instrument evidencing such tax lien by the tax district issuing the same shall be evidence of the fact that the tax or other legal charges represented thereby have not been paid to the tax district or assigned by it.” (Real Property Tax Law, § 1120, subd 2 [emphasis added].)
Although as the majority states the purpose of this section is an evidentiary one, its language indicates a recognition of the true nature of the real property interest purchased by a tax district at a tax sale. A tax certificate merely evidences the existence of a tax lien; it does not evidence ownership of title, whether choate or inchoate. While it is true that the provisions of title 3 as adopted by the City of Buffalo do not supersede any of the city’s charter provisions (Real Property Tax Law, § 1104), I believe the adoption of this title by itself is sufficient to preclude the result reached in Ueck — a result reached by a literal interpretation of the city’s charter.
For this reason, as in the case of the present Erie County Tax Act, I would hold that the language contained in the Buffalo City Charter, as supplemented by title 3 of the Real Property Tax Law, sufficiently demonstrates the intent of the tax district to view the purchase of a tax sale certificate as the purchase of a tax lien and not as the purchase of the property itself with its resultant discharge of the delinquent taxpayer’s personal liability.
Accordingly, I would reverse the order of the Appellate Division and grant summary judgment in favor of the City of Buffalo and the County of Erie against Cargill, Inc.
Chief Judge Breitel and Judges Jones and Wachtler *22 concur with Judge Gabrielli; Judge Jasen dissents and votes to reverse in a separate opinion in which Judge Cooke concurs; Judge Fuchsberg taking no part.
In each case: Order affirmed, etc.