VILLAGE OF LYNBROOK, Respondent, *v.* CARL OTTO et al., Appellants.

(Argued January 4, 1935; decided February 26, 1935.)

*Theodore N. Ripsom* and *Eugene R. Hurley* for appellants. The only authority for village assessments against person or property is the Village Law (Cons. Laws, ch. 64). No power is granted by this law to assess any

person for taxes because of his ownership of, or interest in, real estate. (*Hilton* v. *Fonda*, 86 N. Y. 339; *City of New York* v. *McLean*, 170 N. Y. 374; *Queens Co. Water Co.* v. *Monroe*, 83 App. Div. 105; *Stebbins* v. *Kay*, 123 N. Y. 31; *City of Rochester* v. *Bloss*, 185 N. Y. 42.) The provisions of section 71 of the Tax Law (Cons. Laws, ch. 60) cannot be transferred by implication to the Village Law. (*Stebbins* v. *Kay*, 123 N. Y. 31; *People* v. *Purdy*, 144 App. Div. 361; 203 N. Y. 555; *Smith* v. *Russell*, 172 App. Div. 793; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Matter of City of New York*, 190 N. Y. 350.)

*Arden H. Rathkopf* and *Raphael W. Alpher* for respondent. Section 126 of the Village Law as amended gives the plaintiff the right to bring the action. (*Village of Charlotte* v. *Keon*, 207 N. Y. 346; *Queens County Water Co.* v. *Monroe*, 83 App. Div. 105; *McClure* v. *Niagara County*, 50 Barb. 594; *Oldfield* v. *N. Y. R. R. Co.*, 14 N. Y. 310; *Juliand* v. *Rathbone*, 39 N. Y. 369; *Tillotson* v. *Wolcott*, 48 N. Y. 188; *Foote* v. *People*, 56 N. Y. 321; *Butterfield* v. *Rudde*, 58 N. Y. 489; *Farmers Bank of Fayetteville* v. *Hale*, 59 N. Y. 53; *Matter of Rochester*, 66 N. Y. 413; *Matter of McMahon*, 102 N. Y. 176; *Lamport* v. *Smedley*, 213 N. Y. 282.) The theory of the present Tax Law is based on the principle of personal liability for real property taxes. (*Litchfield* v. *Vernon*, 41 N. Y. 123.)

CROUCH, J. Section 126 of the Village Law (Cons. Laws, ch. 64) provides that an action may be maintained, as upon contract, by a village to recover the amount of an unpaid tax. This action was commenced under the authority of that section to recover from the defendants personally the amount of unpaid taxes assessed against real property owned by them. The defendants moved to dismiss the complaint for insufficiency. The motion was denied. The Appellate Division affirmed the order of

denial by a divided court, and certified to this court the question whether the motion should have been granted. The answer depends solely upon whether there is any personal liability imposed by statute for taxes upon resident owners of property within a village after due assessment and levy.

Prior to 1911 it had been the long-settled policy of this State to make the resident owner of land, as well as the land itself, liable for taxes assessed upon it. While it was the land itself which was taxable, the tax was assessed against the resident owner or occupant; and it was that assessment which created not only a lien upon the property but also a personal liability against the person assessed. " * * * the ultimate tax levied by reason of the assessment is a charge against the person assessed, and is to be collected from his personal estate; * * *. Hence it is, that the action of the assessors in assessing lands to a person initiates a charge upon him personally." (*Hilton* v. *Fonda*, 86 N. Y. 339, 346.)

From the time of the Revised Statutes (1 R. S. p. 390, § 9) to the time of the Consolidated Laws (5 Cons. Laws [1909] p. 4034, § 21) the assessors had been required to prepare an assessment roll containing separate columns, in the first of which were the names of all taxable persons in the tax district; in the second the quantity of land to be taxed to each person, and in the third the full value of such land. The roll was divided into several parts, one of which, known as the resident part, carried all assessments against owners or occupants (except corporate owners), and another, known as the non-resident part, carried the land of non-residents. Assessments against the owner or occupant in the resident part of the roll constituted a personal liability against the person assessed, as well as a lien upon the property. Assessments of property in the non-resident part of the roll constituted a lien upon the land, but no personal liability against the owner.

The administrative difficulties under this system became so serious that the Board of Tax Commissioners in their annual report for 1910 made the following recommendation to the Legislature: " All assessments of real property should be made directly against the property itself, with sufficient designation or description to identify it, without any attempt, as respects the form of assessment, to create a personal liability against the owner or occupant for the payment of taxes levied thereon, and the present distinctions as to the forms of assessments should be abolished.  The name of the owner, or supposed owner, should be carried upon the roll in connection with the assessment, simply as an additional means of identifying the property and as an aid in reference.  If it is desirable to retain the features of the present law in respect to the personal liability of the owner for the payment of taxes, it should be created under a general provision of the statute in those cases where the owner is a resident of the State, or at least a resident of the tax district where the real property is situated, and providing a remedy for its enforcement, which liability shall be made to depend solely upon the fact of residence and ownership, and not upon the form of assessment " (p. 21).

Accordingly there was enacted chapter 315 of the Laws of 1911 which amended various provisions of the Tax Law (Laws of 1909, ch. 62; Cons. Laws, ch. 60). Section 21, relating to the preparation of the assessment roll, was amended so as to provide for a roll to consist of three parts.  Part 1 was to contain the assessment of real property exclusive of special franchises; it was to consist of seven columns; in the first column was to be set down " the name of the owner or the last known owner or reputed owner of each parcel or portion of real property separately assessed.  Such name shall be regarded as an aid to identify such parcel or portion.  A mistake in the name of the owner,

or the last known owner, or reputed owner, shall not affect the validity of the assessment against the parcel or portion." In the second column was to be given a description of such parcel or portion sufficiently accurate to identify the same. In the third column was to appear a statement of the approximate quantity of land in such parcel or portion, and in the fourth column its full value. Section 63 was amended so as to provide, among other things, that " The entry of the name of the owner, last known owner or reputed owner of a separate parcel or portion of real property shall not be regarded as part of such assessment but merely as an aid to identify such parcel upon the roll."

If that were all, it could be argued that no element of personal liability for the payment of real property taxes survived. But that was not all. It seems evident that the Legislature did desire " to retain the features of the present law in respect to the personal liability of the owner for the payment of taxes," because it followed the suggestion of the Board of Tax Commissioners by including in section 63 the following provision: " If the owner of such parcel or portion is a resident of the tax district in which such parcel or portion is assessed, and his name is correctly entered on the roll, he shall be personally liable for the tax assessed against such parcel or portion of real property."

Moreover, those sections of the Tax Law relating to distress and sale (§ 71) and to proceeding supplementary to execution as upon a judgment docketed (§ 299), which had always been the remedies for the enforcement of personal liability, were left unchanged.

By chapter 277 of the Laws of 1914, section 21 of the Tax Law, as amended in 1911, was repealed and a new section was inserted in the place thereof, which provided for "An assessment roll or rolls, the form of which shall be prescribed or approved by the state board of tax commissioners, so classified and arranged with respect to

number. of parts and number of columns in each part and with such entries and descriptions as shall be sufficient to identify each separately assessed parcel or portion of real estate with the approximate quantity of the square feet, square rods or acres contained in such parcel or portion or a statement of the linear dimensions thereof." It was also provided that " The state board of tax commissioners shall adopt regulations for the preparation of the assessment roll and shall advise with and instruct boards of assessors and other officers as to their duties in respect thereto." The genesis of the new section is perhaps to be found in the report of the Board of Tax Commissioners for 1913, which recommended to the Legislature, among other changes which should be made, " authority in the Board to prescribe the form of assessment-roll and such other blanks as are used by the assessors in towns and villages, and in cities where the charter does not specifically govern." (p. 23).

We turn now from the provisions of the Tax Law which apply generally to the assessment and collection of taxes in towns, to the provisions of the Village Law relating to the same subjects. The original Village Law was chapter 21 of the " General Laws," being chapter 414 of the Laws of 1897. Section 104 thereof directed that the assessors should prepare an assessment roll of the persons and property taxable within the village in the same manner and form as was required by law for the preparation of a town assessment roll. Section 126 provided that an action might be maintained as upon contract by the village to recover the amount of an unpaid tax. The judgment, when docketed, should be a lien upon the real property of the defendant. Supplementary proceedings in accordance with the provisions of the Tax Law might also be taken. Those provisions have been continued and are to be found in the same numbered sections in the existing Village Law (Laws of 1909, chap. 64). By virtue thereof there can be no

doubt that down to the enactment of new section 21 of the Tax Law by chapter 277 of the Laws of 1914, a village could maintain an action under section 126.

The only serious question in the case is whether the effect of new section 21 of the Tax Law was to do away with all personal liability for unpaid taxes, and thus to leave in suspension the various remedies for the enforcement of personal liability. The argument of the appellant on this point is, in substance, that the general personal liability provision in the Tax Law (formerly § 63, now § 71) is operative only where the name of a resident owner is correctly entered on the assessment roll; that under the provisions of new section 21 of the Tax Law, there is no mandate to the Board of Tax Commissioners to include in the form of assessment roll the names of owners of real property, and hence that the incidence of personal liability on a taxable class of persons is left to the whim or caprice of an administrative board. The construction of new section 21 must rest not alone upon its literal language, but upon the legislative intent in its enactment to be derived from a consideration of the history of the section, and of its relation to many other sections in the general tax laws dealing with related matters. The genesis of the section was referred to above. Viewed in that light, no purpose to change the contents as distinguished from the form of the assessment roll is apparent. The object sought was to secure uniformity and clarity of form throughout the State. In the absence of direct words of authority, it is not to be supposed that the Board of Tax Commissioners was endowed with power to change what had been an essential part of the contents of an assessment roll for a century. That view is strengthened by the fact that the personal liability provision and the several remedial provisions for its enforcement were left unchanged. Not only were they then left unchanged, but during the years since 1914 one finds various acts amending all of those provisions, indicating

clearly the legislative view that they were alive and operative. Finally, since section 21 itself grants power to the Board of Tax Commissioners to adopt regulations for the preparation of assessment rolls, and to advise and instruct assessors, we may perhaps refer to such regulations and instructions to ascertain the practical construction which has been given to the section. So doing, one finds that the historic contents of an assessment roll have been preserved, and that the first column in the part devoted to real property contains, as it always has contained, the name of the owner.

We think no power or authority was conferred upon the Board of Tax Commissioners by new section 21, as enacted in 1914, to omit from any form of assessment roll prescribed or approved by it, any element essential to the continued existence of a personal liability for unpaid taxes and the remedies for its enforcement. Any other construction would render nugatory many subsequent acts of the Legislature. We may not lightly impute futility to that body. Moreover, such construction would involve recognition of a fundamental change in long-established policy, with all the evidence pointing the other way. If, in truth, that policy has changed, it remains for the Legislature to embody it in clear and appropriate legislation.

The order should be affirmed, with costs, and the question certified answered in the negative.

LEHMAN, J. (dissenting). Perhaps, in the language of the Tax Law and the Village Law read in the light of their history, a legislative intent or policy may be found that an assessment upon taxable land, when made against a resident owner, should create not only a lien upon the land but a personal liability against the person assessed. Such intent is not enough. In order to give it vitality, the Legislature must provide that assessments *shall* be so made in order that all resident owners shall be under the same burden. The Legislature cannot delegate to

local officers the determination of whether some resident owners, all resident owners, or no resident owners shall rest under a personal liability for the payment of taxes upon that land, nor can the Legislature give unrestricted discretion to the Board of Tax Commissioners to determine whether or not assessment shall be made against resident owners. That is a matter of general legislative policy, and determination of a general legislative policy can, of course, not be delegated to administrative officers.

The decisive question upon this appeal is whether the Legislature has imposed upon local tax assessors a mandate to assess taxes upon land against the resident owner of such land. It is doubtful whether the Legislature imposed such a mandate under the Tax Law, as amended by chapter 315 of the Laws of 1911. If it did, it seems to me quite clear that it removed the mandate by chapter 277 of the Laws of 1914.

Even under the earlier amendment, though there was provision for the insertion in a separate column of " the name of the owner or the last known owner or reputed owner of each parcel or portion of real property separately assessed " (§ 21), the Legislature expressly stated that the " entry of the name of the owner, last known owner or reputed owner of a separate parcel or portion of real property shall not be regarded as part of such assessment, but *merely* as an aid to identify such parcel upon the roll " (§ 63). That seems a tenuous basis for an implication that the assessors were under a positive duty to ascertain, if they could, the name of each resident owner and to enter that name correctly on the assessment roll so that each resident owner equally might be personally liable for the tax.

Under the amendment of 1914, even that tenuous basis disappears. No longer is there provision by the Legislature for a column in which the name of the owner or the last known owner or even the " reputed owner " of a parcel of land might be placed as an " aid to identify such

parcel." On the contrary, then the Legislature expressly left prescription of the " form " of the assessment roll or rolls to the state board of tax commissioners, with the direction only that the " entries or descriptions * * * shall be sufficient to identify each separately assessed parcel or portion of real estate with the approximate quantity of the square feet, square rods or acres contained in such parcel or portion or a statement of the linear dimensions thereof."

Of course it is apparent that the purpose of this change was confined to matters of form, and that the form of tax rolls prescribed by the State Board of Tax Commissioners must still permit the inclusion of those matters in the assessment roll which the Legislature expressly or impliedly directed should be included. Certainly after the 1911 amendment the inclusion of the name of the owner, last known owner or " reputed " owner may hardly be regarded as an essential part of the assessment roll when the Legislature had expressly provided that the entry of such name " shall not be regarded as part of such assessment, but merely as an aid to identify such parcel upon the roll." Certainly the Legislature must have intended to give to the State Board of Tax Commissioners the power to eliminate the entry of such name even as an aid to identify a parcel of land upon the assessment roll when it removed from the statute reference to names as an aid to identify property, and confided to the State Board of Tax Commissioners the power to provide for " such entries and descriptions as shall be sufficient to identify " the parcel assessed. The fact that the State Board of Tax Commissioners did in fact retain a column for the name of the owner has, I think, no significance. It can hardly be said to be inconsistent with a construction of the statute that the State Board had discretion to retain or discard this form of identification.

Thus the judgment of the courts below can, I think, be sustained only if we find in the provisions by the Legis-

lature for personal liability where the name of a resident owner is correctly entered, an implied direction that such names shall if possible be correctly entered; but that implication is negatived by the fact that in 1911 the Legislature expressly provided that the entry of the name of the owner, the last known owner or the reputed owner shall not be part of the assessment, and indeed the name of the "last known" owner or the "reputed" owner could serve no purpose except as an aid to identify the property taxed. It thus becomes evident that the purpose of the Legislature in retaining the provision for personal liability was merely to permit its administrative officers, if they saw fit, and when they saw fit, to impose a personal liability by the entry of the correct name of a resident owner, though the statute did not require such entry. That the Legislature could not do.

Until the recent depression there was little, if any, need for resort to personal liability. Today, we are told, taxable property cannot be sold for the amount of the tax lien. If a landowner is to be subjected to a personal liability for taxes beyond the price for which the land itself can be sold, the Legislature must say so directly and not leave to administrative officers the determination of when and whether such a liability should be created.

Judgment should be reversed, with costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur with CROUCH, J.; LEHMAN, J., dissents in opinion.

Order affirmed, etc.