In the Matter of the Accounting of LINCOLN-ROCHESTER TRUST COMPANY, as Executor of WALTER H. WOOD, Deceased.

Surrogate's Court, Monroe County, November 14, 1946.

*Luther I. Webster* for executor.

*Henry S. McGonegal* and *Joseph B. Boyle* for County of Monroe, claimant.

WITMER, S. On this judicial settlement proceeding the County of Monroe has endeavored to prove its claims of $606.30, with interest, for unpaid taxes on three parcels of land located in the city of Rochester, county of Monroe, which the testator owned or in which he had an interest as tenant in common during the years 1928 through 1945. The testator's interest in said lands was acquired through inheritance. He died on March 21, 1945. The taxes for the year 1945 were levied and became a lien on the several parcels on December 31, 1944. (L. 1938, ch. 441, § 8.) In August of each year following the levy of the tax the County of Monroe sold all of the said properties for nonpayment of such taxes, and the county bought in the certificates of sale issued thereon, pursuant to law. The three properties were assessed in the name of " Walter Wood " or " Walter H. Wood " throughout said years, and he was a resident of the city of Rochester throughout said period. The county makes claim under section 71 of the Tax Law and subdivision 2 of section 212 of the Surrogate's Court Act.

Section 71 of the Tax Law provides in part as follows: " If the owner of a parcel or portion of real property is a resident of the tax district in which such parcel or portion of real property is assessed, and his name is correctly entered on the assessment-roll, he shall be personally liable for the tax assessed against such parcel or portion of real property. If any person shall

neglect or refuse to pay any tax imposed on him, the collector may levy upon any personal property in the county belonging to or in the possession of any person who ought to pay the tax, and cause the same to be sold at public auction for the payment of such tax, and the fees and expenses of collection * * *.''

Under the circumstances existing in this case personal liability for the tax arose against the testator with each tax levy. (*Village of Lynbrook* v. *Otto*, 266 N. Y. 308.) The fact that others may have been part owners with him is not material. We are not concerned with *their* personal liability but only the testator's, and each fractional owner is obligated in full for payment of the tax. Moreover, the papers in this proceeding prior to the presentation of the county's claim show that the testator until then claimed to be the sole owner of the properties. A slight variation in the name or the omission of a co-owner has been held insufficient reason for avoiding the personal obligation fixed by the statute. (*People ex rel. Cammann* v. *Feitner*, 61 App. Div. 115, affd. 168 N. Y. 646; *People ex rel. Mohawk & M. R. Co.* v. *Garmon*, 63 App. Div. 530.)

The testator's personal liability for the tax, however, was discharged by the county's subsequent action of selling the properties for the unpaid taxes. (*Matter of Ueck*, 286 N. Y. 1; *Matter of Frederick E. Wyatt*, opinion by former Surrogate JOSEPH M. FEELY, filed in this court July 24, 1941.) In *Matter of Wyatt (supra)* the court said at pages 3 and 4: '' In the first class, where there have been tax sales, other than foreclosures, the decisive point is whether there is a substantial similarity between the statutes in the County of Erie, under which the Ueck ruling was made, and the special acts relating to the County of Monroe that were in effect prior to the death of testator, and likewise the general Village Law.

'' Between the Erie County Act (Laws of 1884, ch. 135), and the old Monroe County Act, (L. 1884, ch. 107), under which the taxes in question were levied, there is a similarity not only in the substantive features, but even in the wording, which was probably due to the fact that both Acts were passed in the same session of the Legislature. Under a literal reading, the bidder at a tax sale must be deemed to have bought the real estate, under the standards of interpretation that prevailed in the Ueck case; and the local county taxes must be deemed to be uncollectible from this estate. Tax statutes are usually so read as to give the taxpayer the benefit of any doubt; and if the wording of the applicable statute conflicts with the practice under it, the remedy must be sought from the Legislature, rather than from

the courts; even though for fifty years after 1884 hundreds of thousands of dollars have been invested at tax sales in this county at which I dare say hardly one per cent. of the bidders at any sale really wanted title to real estate; but almost all bids were for the tax lien as such, because of its high rate of interest; and bids were commonly made for blocks of items so as to be able to average the gains by abandoning those items that might require resort to foreclosure. In contrast, it may be noted that under the present Monroe County Act, (L. 1938, ch. 440, 441), it is clear that the bidder at tax sale obtains only a ' lien.' None of the county taxes in question were levied or sold under the local Acts of 1938.''

The decision in the *Wyatt* case (*supra*) is here adopted, and the county's claims for taxes for the years prior to 1938 must, therefore, be dismissed.

In respect of the remaining taxes we must consider the dictum in the second last sentence in the above quotation from the opinion in the *Wyatt* case (*supra*), and also the case of *Matter of Louis J. Vogler,* no opinion, decree entered in this court on April 30, 1945, in which payment of certain county taxes, including some levied since 1938, were directed to be paid out of the personal estate. Only a small amount ($117.84) was involved in the *Vogler* case (*supra*); no briefs appear to have been submitted in behalf of the representative, and no opinion was written. Presumably, reliance was placed on the dictum in *Matter of Wyatt* (*supra*). In deference to my distinguished predecessor it is with reluctance that I disagree with such dictum.

An analysis of the Monroe County Tax Act, as amended by chapters 440 and 441 of the Laws of 1938 and of the Act (L. 1884, ch. 135) under which the County of Erie conducted the sales considered in *Matter of Ueck* (*supra*) shows that in the light of such decision there is no essential difference between said acts concerning the matter here in issue. Moreover, the same may be said of the former Monroe County Tax Act created by chapter 107 of the Laws of 1884 and said amended acts. (L. 1938, chs. 440, 441.) It may be noted that many parts of the earlier act, particularly relating to sales for unpaid taxes, were included verbatim in the later act. (I.e., L. 1884, ch. 107, §§ 4, 5 and L. 1938, ch. 441, §§ 18, 19.) To be sure, many changes were made in the later law, but in my judgment they were not vital to the issue herein.

Since the *Ueck* case (*supra*) was based upon the Erie County statute of 1884, and in my opinion is controlling here, a brief

comparison of the two acts is in order. Chapter 440 of the Laws of 1938 deals with the foreclosure of tax liens. Chapter 441 of said Laws provides for " the assessment, levy and collection of taxes in Monroe county " and " the sale of lands and certificates of sale of lands sold for unpaid taxes "; and it is the latter chapter which is to be compared with said acts of 1884.

The Erie County act of 1884, chapter 135, provides for the *sale of the lands* upon which the taxes had been levied and remained unpaid, and specific mention is made of the sale of such lands in the following sections of such act: Sections 14–18, 20–22, and 24–32. Section 16 provides as follows: " § 16. The purchasers at such sales shall pay the amount of their respective bids to the said county treasurer within three days after the sale, and after such payment shall have been made, the said county treasurer shall give to the purchaser of any such real estate a certificate in writing, describing the real estate purchased, the sum paid, and the time for which the purchaser shall be entitled to the possession thereof." Section 22 of said Act provides for the perfecting of " the title of the county to any lands bid in and held by him [county treasurer] for said county, and in so doing the same proceedings shall be had as in the case of an individual perfecting a title to lands under this act; provided, however, *that tax sales owned by the county of Erie under this act shall be a lien upon the property so sold until paid;* and the notices required to be served, and the proceedings to be had, by this section for the collection of said lien, or perfecting the title to said lands, may be served or had at any time before the redemption of the lands so sold."

It was under this act that the Court of Appeals (*Matter of Ueck, supra*) held that the sale constituted a sale of the lands even though the purchase was made by the county itself, and that the fact of the sale effected a discharge of the tax and a cancellation of the personal liability of the owner of the property for the payment of such tax.

The Monroe County act of 1938, chapter 441, contains similar provisions for the *sale of the lands* upon which the taxes have been levied and remain unpaid, and specific mention is made of the sale of such lands in the following sections of such act: Sections 10, 15, 18–23, 25–28, 31–33, 36 and 39. Since 1938 a few amendments have been made to said act, but they are not material to this issue. It is stated in the act that it is the duty of the county treasurer to collect annually all unpaid taxes upon lands in the county as therein provided (§ 15); that he shall publish a list " of the lands charged with such unpaid taxes

* * * together with a notice that so much of said lands as may be necessary *to discharge* the taxes * * * will * * * be sold at public auction * * * '' (§ 18); that on the day specified he '' shall commence the sale of such lands * * * until so much of each parcel assessed shall be sold as will be sufficient *to pay* the taxes '' (§ 19); and that he '' shall give the purchaser of any such real estate a certificate describing the lands purchased '' (§ 20). (Italics supplied.) Section 23 provides that '' The owner of any certificate of sale of lands in Monroe county sold for Monroe county taxes * * * including * * * the county of Monroe, shall have a lien on such lands until it is paid * * * ''. Section 30 is authority for the county treasurer to sell the certificates of sale purchased by the county.

It is seen from the foregoing that the act of 1938 in respect of the sale of lands in payment and discharge of unpaid taxes is very similar to the Erie County act of 1884. It is argued, however, on behalf of the County of Monroe that the 1938 act, particularly section 23 thereof, provides for the sale of tax liens and not of the property, and hence is not within *Matter of Ueck* (*supra*) and reference is made to page 7 of said opinion. The court in *Matter of Ueck* (286 N. Y. 1, 7, *supra*) said in this respect: '' We are not here concerned with the sale of tax *liens* upon the property of the owner. Such a sale is permitted only when the Legislature grants such power in express terms. That was pointed out in *County Securities, Inc.*, v. *Seacord* (278 N. Y. 34, 39), where it was said: ' The general Tax Law of the State provides for the sale of the *property* in the enforcement of tax liens. (Tax Law, art. 7.) That law applies in all cases except where the Legislature by express language has provided a different method to be employed in certain subdivisions of the State.' No such grant of power has been made to the city of Buffalo or the county of Erie.''

Can it be said that the 1938 act grants the county the right to sell the tax lien instead of the property, so as to constitute such statute as was referred to in the above quotation? I think not. It seems that the most that can be said of the county's position thereon is that the act is not entirely clear in respect of the nature of the lien. However, it is familiar law that no change in tax practices may be inferred, but must be made in express terms (*County Securities, Inc.*, v. *Seacord*, 278 N. Y. 34, 37, *supra*); and that where any doubt exists as to the meaning and application of a tax statute, it must be resolved in favor of the taxpayer.

As shown by the above quotation from the statute the act expressly provides for the sale of lands as a means of collecting the unpaid taxes thereon, but in the language of the statute " to discharge the taxes " (§ 18). Having done that, the statute (§ 23) grants to the county a lien upon the lands so purchased, pending the time of perfecting title. Whether by design or otherwise, the statute (§ 24) apparently makes a distinction between " tax liens " and " liens of certificates of sale ". What the distinction is may be in doubt, but the taxpayer is entitled to an interpretation that the lien of the certificate of sale is one specially conferred by statute to aid the purchaser in liquidating his interest in the property, and that it arises after the personal liability for payment of the tax has been dissipated by the county's conduct of the tax sale. It is part of the county's " inchoate title ". (*Matter of Ueck, supra,* pp. 17–18.)

The right to a lien granted by section 23 of chapter 441 of the Laws of 1938 was in effect a continuation of such right granted to the county in these matters by section 2 of chapter 454 of the Laws of 1936, and prior to that time it does not appear that the County of Monroe had any such lien. On the other hand, such lien, as shown above, was conferred upon Erie County in 1884 by section 22 of chapter 135 of the Laws of that year. This latter lien was made assignable by section 15 of chapter 383 of the Laws of 1909, which is comparable to section 30 of the 1938 Monroe County act. But nowhere in the earlier sections of the act, wherein provision is made for the sale to collect taxes, is reference made to a sale of a tax lien; and none is in the statute within the meaning of the language in *Matter of Ueck (supra,* p. 7).

As shown above, section 22 of chapter 135 of the Laws of 1884 gave to the County of Erie a lien on the " tax sales owned by " it " upon the property so sold until paid ". Section 23 of the 1938 act does no more for the County of Monroe. If this act had been enacted after the decision in the *Ueck* case (*supra*), it might be argued that it was done with intent to remedy the situation thus resulting, but the *Ueck* case was decided in 1941, and up to that time it was not thought that it was material whether the county was selling the property or its lien. However, in this respect it should be noted that even in the *Ueck* case the Surrogate and the Appellate Division held that the personal liability for the tax was discharged where a third person made the purchase at the tax sale. (*Matter of Ueck, supra,* p. 6.) It appears from the opinion of the Court of Appeals therein that it was the incongruous situation thus resulting that motivated the

majority of the court in reaching its conclusion. The liability of the taxpayer should not depend upon who made the purchase at the tax sale. That court also was moved by the fact that under the Erie County act, where the county made the purchase, 1% per month was thereafter added to the tax without limitation of time. In this respect the Monroe County act differs, there being a limit as to the total amount of interest and penalties which may accrue on the certificate of tax sale, but this difference does not alter the principle involved in that decision.

It is not for this court to question the advisability of the decision in the *Ueck* case (*supra*) and to inquire why the county should be allowed to enforce the personal liability of the owner under section 71 of the Tax Law before the sale but not thereafter, although the county is required by law to conduct such sale and thus to discharge the personal liability. If the Legislature wishes to change this state of the law, it may do so. This court cannot.

Subdivision 2 of section 212 of the Surrogate's Court Act provides: '' § 212. *Payment of debts.* Every executor and administrator must proceed with diligence to pay the debts of the deceased according to the following order: * * * 2. Taxes assessed on property of the deceased previous to his death.''

Under this section the county relies on *Matter of Gill* (199 N. Y. 155). In this case at page 159, the court said: '' Nor is it necessary to inquire whether in Brooklyn at the time of the imposition of these taxes they constituted a personal charge against the testator or not. Throughout all the state, in the case of a tax against the lands of a non-resident, no personal charge is created against any person, but simply a lien on the land. The command of the statute, however, is imperative, and executors and administrators must pay out of the personalty all taxes on the property of the deceased.''

Since personal liability for payment of the tax no longer exists in this case, the above language would seem particularly pertinent. However, the facts in *Matter of Gill* (*supra*) as well as in the case at bar, are very similar to those in *Matter of Ueck* (286 N. Y. 1, *supra*). *Matter of Gill* (*supra*) was cited in the latter case at page 5 for the proposition that there is personal liability for payment of taxes levied upon property of a deceased resident owner prior to his death, and the case was not overlooked by that court. It does not appear that in *Matter of Gill* (*supra*) there had been a sale of the land for unpaid taxes. In

view of *Matter of Ueck* (*supra*) the language quoted above from *Matter of Gill* (*supra*) cannot be applied to a case where there has been a sale of the lands for unpaid taxes under a statute such as exists in Erie County and Monroe County.

The remaining tax claims herein of the County of Monroe are, therefore, disallowed.

Submit decree accordingly.