CITY OF BUFFALO, Appellant-Respondent, v CARGILL, INCORPO-
RATED, Respondent-Appellant.

COUNTY OF ERIE, Appellant-Respondent, v CARGILL, INCORPO-
RATED, Respondent-Appellant.

Fourth Department, December 17, 1976

*Leslie G. Foschio, Corporation Counsel (Hugh B. Scott* of
counsel), for City of Buffalo, appellant-respondent.

*James L. Magavern, County Attorney (Jan Egger* of coun-
sel), for County of Erie, appellant-respondent.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Alexander*

*Cordes, David A. Clemens* and *Paul F. Jones* of counsel), for respondent-appellant.

MARSH, P. J. Plaintiffs City of Buffalo and County of Erie appeal from so much of orders of Supreme Court, Erie County, as granted the motions of defendant Cargill, Inc. to dismiss, pursuant to CPLR 3211, plaintiffs' first cause of action to impose personal liability on Cargill for delinquent real property taxes. Cargill cross-appeals from so much of the orders as denied its motions to dismiss plaintiffs' second cause of action for waste in removing what are alleged to be fixtures from the properties in question.

Defendant Cargill, a foreign business corporation incorporated under the laws of the State of Delaware, was the owner in fee of three parcels of real property located in the City of Buffalo, County of Erie, when it ceased paying real property taxes to the city in 1970 and to the county in 1971. Cargill failed to pay these taxes in subsequent years as well. In May of each year in which Cargill paid no taxes to the city (1971-1975 inclusive) the city purchased, at its tax sales, certificates of tax sale for the three parcels pursuant to article 31 of the Buffalo City Charter (Local Laws, 1927, No. 4). Annual purchases of tax certificates upon these three parcels were also made by the county in November of 1971 to 1974 inclusive, pursuant to the Erie County Tax Act (L 1942, ch 812, as amd by L 1969, ch 682). Plaintiffs city and county each commenced these actions to impose personal liability on defendant for unpaid real property taxes under section 926 of the Real Property Tax Law. Both plaintiffs also set forth a second cause of action for waste and despoliation to recover from defendant for the alleged removal of fixtures from the assessed realty and consequent impairment of the value of plaintiffs' tax liens thereon. Defendant Cargill moved pursuant to CPLR 3211 to dismiss the complaints for failure to state a cause of action.

Special Term relying on *Matter of Ueck* (286 NY 1) granted defendant's motion to dismiss the first cause of action for the collection of taxes on the ground that the purchase of tax sale certificates at the annual sales by the taxing authority extinguished what personal liability for tax indebtedness the taxpayer may have owed the governmental authorities and denied defendant's motion to dismiss plaintiffs' action for waste on the ground that questions of fact regarding the items removed subsequent to the imposition of plaintiffs' tax liens (as to use, purpose and owners' intention as to their perman-

ency) had to be resolved before it could be determined whether such items were actually real property as defined in section 102 of the Real Property Tax Law.

Section 926 provides: "Personal liability for taxes; optional method of collection.

"1. The owner of real property, or of an interest therein, if a resident of the city or town in which such property or interest therein is assessed and if his name is correctly entered on the roll, shall be personally liable for the taxes levied thereon. The term 'resident' shall include a corporation having within such city or town a place for the regular transaction of business or in actual possession of real property therein.

"2. After the thirty-first day of January, the collecting officer may call on any person personally liable for unpaid taxes listed on the roll and demand payment thereof. If any such person refuses to pay the taxes demanded, the collecting officer may levy upon any personal property in the county belonging to or in the possession or such person and, unless the taxes are paid prior thereto, cause the same to be sold at public auction for the purpose of paying the taxes due and the expense of levy and sale."

Paragraph 3 provides for the time and place of auctioning off the personal property. Paragraph 4 directs distribution of the proceeds of the sale of personal property and paragraph 5 concerns the collection from an owner who has moved to another county. Subdivisions 1 through 3 of section 926 are derived from section 71 of the old Tax Law which was the section construed by the Court of Appeals in *Matter of Ueck (supra).*

In *Matter of Ueck (supra)* decedent, one Alfred C. Ueck, owned certain parcels of real property which were sold at annual tax sales for purposes of collecting delinquent taxes between 1926 and 1937 to the City of Buffalo and County of Erie. Upon the death of Ueck in 1936, the City of Buffalo and the County of Erie sought to hold decedent's estate liable for all the taxes which the tax sales certificates held by the city and the county represented that the city and county had purchased over the years commencing with 1926, together with 12% interest and additional expenses. The Court of Appeals addressed itself to the question whether the liability of the property owner for real property taxes was discharged when the property was sold pursuant to the applicable real property tax laws for nonpayment of taxes and purchased by

City of Buffalo and County of Erie at the annual tax sale. The Surrogate had determined the estate to be liable for all the certificates of sale held by the city and county plus 12% interest and additional expenses.

The Court of Appeals noted that certain results ensued from the Surrogate's holding. The tax district would be permitted to buy taxes year after year, not terminate the equity of redemption of the owner of the property listed on the tax rolls, wait until the owner died and collect all the taxes represented by the tax liens, plus 12% interest and additional expenses with no statute of limitations applicable to such procedure. The court pointed out that personal liability could only be imposed as authorized by section 71 of the Tax Law (now § 926). The requirement that a taxpayer be a resident of the tax district before personal liability could be imposed as contained in section 71 of the Tax Law is carried over in almost identical form in current section 926 *(Village of Massapequa Park v Massapequa Park Villa Sites,* 278 NY 28) except that a corporation would be liable personally, although headquartered elsewhere if it was in actual possession of the real property situate in the tax district. This liability can be enforced by summary levy and collection.

The Court of Appeals in *Ueck* after analysis of the Tax Law, the Erie County Tax Act and the city charter tax provisions concluded that the real property tax annually assessed was considered paid as affecting the personal liability of the owner appearing on the tax rolls, upon the annual tax sale of the parcels, with issuance of certificates of sale to the city and the county.

The Buffalo City Charter presently is not essentially different with respect to the tax scheme outlined for enforcement and collection of delinquent taxes than that analyzed by the Court of Appeals in *Ueck.* The present charter provisions provide in section 610 that delinquent real property taxes be enforced by sale of the real estate at annual tax sales and that any property upon which a tax remains unpaid that is omitted from such sale may be sold at any time within 10 years (as amd by L 1935, ch 370). Section 611 of the charter requires that real estate parcels be sold for unpaid taxes plus interest and fees (as amd by L 1935, ch 370). Section 612 requires the city to bid in if no one buys the tax delinquent parcels. Section 614 provides for certificates of sale to the purchaser including the city with the city paying for its purchase with

tax anticipation notes (a bookkeeping entry; *Matter of Ueck, supra).* Section 616 permits the purchaser, including the city, to hold the property for its own use unless it is redeemed as provided in the article. Section 617 permits the purchaser of the certificate of sale to obtain actual possession of the property after the time to redeem has expired, as such time is stated in the notice to redeem, and by section 618, a right to redeem by anyone having interest in the property is granted by payment of the tax, fees, interest and expenses with interest at 12% from the date of the certificate of sale. Section 619 provides that subsequent to one year after the tax sale, the holder of the certificate of sale is entitled to give notice to the owner occupant and other interested parties with respect to the real property which notice shall provide a date being not less than three months from the service of the notice and not less than two years from the date of the sale, which date shall be the last date within which the affected interests have a right to redeem the property. Under section 621, the owner or any person having interest in the property, may redeem at anytime prior to a conveyance of the property by deed from the city to the holder of the tax sale certificate (City Charter, § 623).

The only change of significance in the charter provisions which the Court of Appeals applied in *Matter of Ueck* is made by section 621 (as amd by L 1946, ch 952) which places a 25-year Statute of Limitations upon the enforceability of a certificate of sale.

The current Erie County Tax Act (L 1942, ch 812, as amd by L 1969, ch 682) is not substantially different from the Buffalo City Charter provisions outlined above in respect to the matters germane to the instant appeal. The 1942 real property tax provisions applicable to Erie County were amended by chapter 682 of the Laws of 1969 to provide that certificates of sale would be conclusively deemed to have been satisfied 25 years subsequent to the date of issue, the same Statute of Limitations which was added to the Buffalo City Charter. An additional provision was added to restrict the accumulation of interest and penalties in connection with the certificate of sale to a 15-year period which restriction was not contained in the Buffalo Charter (L 1969, ch 682—Erie County Tax Act, § 7-16.0). The Erie County Tax Act as amended in 1969, does refer to the sale of tax liens as opposed to the sale of the real property itself. However, the substantive provisions reflect

substantially the same scheme prior to such change in the nomenclature and the rights of private purchasers at the tax sale or the County of Erie would not change by reason of the change in nomenclature. The nomenclature was not changed in the Buffalo City Charter.

The determination as to the personal liability of defendant should not turn merely upon the statutory use of the term "tax lien" in providing for the annual tax sale or the use of the term "real property". The focus of the analysis should be upon whether there was a legislative intent to change the law as enunciated in *Matter of Ueck* that personal liability for payment of taxes does not survive the tax sale. Such an intent cannot be gleaned from the statutory revisions subsequent to the date of that decision and particularly the absence of change in substance of section 926 of the Real Property Tax Law.

It might seem desirable upon a public policy basis to hold property owners personally liable for taxes as long as they continue to use and occupy the property, or upon some other rational basis. However, it is clear that the present scheme of personal liability set out in section 926 of the Real Property Tax Law and its predecessor, section 71 of the Tax Law, as pointed out in *Matter of Ueck* is not designed to effectuate such a purpose.

Nor can significance be given to the provisions of subdivision 2 of section 1120 of the Real Property Tax Law which provides that ownership of a tax sale certificate or of any other instrument evidencing such tax lien by the tax district issuing the same shall be evidence of the fact that the tax or other legal charges represented thereby have not been paid to the tax district or assigned by it. This evidentiary rule is relevant to in rem tax foreclosure proceedings should a person having an interest in the property question the validity of a tax sale certificate. It is not concerned with the question of personal liability. An in rem proceeding deals only with the land, its sale, the priority of the various lien interests and the foreclosure of them and any equity of redemption. The same reasoning would apply to the applicability of section 11-2.0 of the Erie County Tax Act which provides that ownership by the county of a tax sale certificate issued by it shall be conclusive evidence that the tax has not been paid.

The Court of Appeals in *Matter of County of Nassau (Gelb-Siegel)* (24 NY2d 621) did not alter the holding in *Matter of*

*Ueck.* In *Matter of Nassau* the land in question was sold at tax sale by the Village of Freeport to a private individual for unpaid 1963 village taxes. In 1964 the County of Nassau took title to such real property by condemnation. In 1965 the period of redemption expired and in 1967 the holder of the tax sale certificate took a tax deed from the village and recorded it. The Court of Appeals held that as of 1964 the record owner continued to be entitled to the equity of redemption and that upon the condemnation date the owner of the tax sale cetificate held only a lien interest. The equity of redemption had not been foreclosed at the time of the condemnation, hence the ownership interest attached to the condemnation award after payment of the taxes, interest and expenses associated with the delinquent village tax. The case does not overrule or impugn the integrity or holding in *Matter of Ueck* with respect to the extinguishment of personal liability for real property taxes at the time the city or county either bids in or is deemed to bid in the delinquent taxes at the annual tax sale. *Matter of Ueck* is followed in a well-reasoned opinion by then Surrogate WITMER in *Matter of Wood* (187 Misc 972, affd 273 App Div 937; see, also, *Matter of DeStefano,* 266 App Div 1041; *Empire Lien Corp. v Young Transp.,* 59 Misc 2d 782).

As to the second cause of action, the removal or destruction by defendant of "fixtures, equipment, appurtenances, or other valuable products" from premises encumbered by plaintiffs' tax liens as alleged in the complaints, if accepted as true, constitutes waste (see *City of White Plains v Griffen,* 169 Misc 706, affd 255 App Div 1003). A tax lien applies solely to the real property upon which the taxes are imposed. Thus defendant in affidavits attempted to eliminate the factual basis for plaintiffs' claim of waste or impairment of tax lien by showing that the property removed was personal rather than real property under the statutory definition of real property in subdivision 12 of section 102 of the Real Property Tax Law. If we treat defendant's motion as one for summary judgment (CPLR 3211, subd [c], although notice to the parties appears lacking) defendant is, nonetheless, not entitled to judgment. Its affidavits merely raise factual issues with respect to the nature of the property removed and the parties responsible for its removal rather than eliminate them *(Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439).

The orders of Special Term should be affirmed.

MOULE, J. (dissenting). Inasmuch as I cannot agree with the

majority's view that the change in nomenclature in the Erie County Tax Act and that the city's adoption of title 3 of article 11 of the Real Property Tax Law did not substantially alter the substantive rights of the parties and that the decision in *Matter of Ueck* (286 NY 1) still possesses continued viability, I dissent and vote to reverse the order insofar as it dismissed the first cause of action in each complaint.

At the time of the Court of Appeals' decision in *Ueck* the Erie County Tax Act and the Charter of the City of Buffalo both specifically provided that delinquent real property taxes would be enforced by the sale of the *real estate* at annual tax sales (see L 1942, ch 812; Buffalo City Charter, § 610 *et seq.*). The court noted that the laws in effect at that time did not provide for anything less than the sale of the property itself and it was within this framework that the court held that (pp 17-18): "[t]he policy of the State and of the political subdivisions affected indicates clearly that when the decedent's real estate was sold and bid in by the city of Buffalo or the county of Erie for non-payment of taxes, there was payment and discharge of such taxes and that the purchaser, whether city or county, became the inchoate titleholder of the land, evidenced by the tax sale certificate."

Such is not the situation, however, at the present time. Since the decision in *Ueck* both the city and the county have either by amendment or resolution changed the provisions previously construed by the Court of Appeals. Thus by chapter 682 of the Laws of 1969, the Erie County Tax Act was amended to delete reference to sale of the real estate and to insert instead procedures for the sale of tax certificates on the real estate. These certificates constitute merely a "tax lien" upon the property (see § 7-11.0) and cannot even by a most liberal interpretation be considered as tantamount to an actual sale of the property itself. Likewise, although the City of Buffalo did not specifically amend its charter provisions, it did supersede their application by adopting title 3 of article 11 of the Real Property Tax Law (see Resolution 185, Proceedings of the Council, City of Buffalo, 1970, Part II, p 2042) which similarly refers to the purchase of "tax liens" upon the delinquent taxpayer's property.[1]

The effect of these revisions is, in my opinion, to provide

---

1. In light of this resolution I find the majority's reference to the now superseded provisions of the Buffalo City Charter to be irrelevant.

that upon a sale to the taxing district, the district would obtain only a "lien interest" in the real property; an interest which is significantly less than the "inchoate title" which according to the Court of Appeals' description was obtained in *Ueck.* This conclusion is reinforced by the Court of Appeals' decision in *Matter of County of Nassau (Gelb-Siegel)* (24 NY2d 621, 626) when the court, in construing similar "tax lien" language in sections 1454 and 1458 of the Real Property Tax Law, stated, "We conclude, therefore, from the wording of the [statute] that the tax sale purchaser acquired only a lien interest in the subject property."[2]

The majority's continued application of the *Ueck* rationale not only conflicts with the obvious intent of the respective legislatures in amending the pertinent tax provisions but also with the Court of Appeals' own perception of the extent of its holding since in *Ueck* the court specifically noted that it was not "concerned with the sale of tax *liens* upon the property of the owner" (p 7).

The majority also places reliance upon the fact that section 926 of the Real Property Tax Law, which imposes personal liability for unpaid taxes upon the owner of the real property, has not been amended. However, under the Court of Appeals' own interpretation of the *Ueck* decision and the subsequent amendments to the tax provisions of both Erie County and the City of Buffalo such a change was not mandated. In *Ueck* the Court of Appeals held that upon purchase of the real property the tax district acquired an "inchoate title", and consequently all aspects of ownership no longer resided in the delinquent taxpayer. Thus, the court properly extinguished the right of the district upon such a purchase to hold the taxpayer personally liable. However, under the amended provisions of the county and city delinquent tax procedures, the tax district acquires only a "lien interest" in the property and does not obtain any of the aspects of ownership necessarily included in the former interest described as "inchoate title". Accordingly, the delinquent taxpayer, at least until the expiration of the period of redemption, retains full ownership in the property, subject only to the district's lien. Thus, under section 926 of the Real Property Tax Law, he may, as owner, be held

2. Since, absent specific instructions to the contrary, terminology is to be uniformly interpreted throughout a statute (People v Gates, 56 NY 387; NY Jur, Statutes, § 141), the court's analysis of the provisions in *Gelb-Siegel* is equally applicable here.

personally liable for such unpaid taxes within the redemption period.

The amendments to the city and county delinquent tax procedures cannot, in my opinion, be construed as mere form without substance and since the decision in *Ueck* is by its very terms inapplicable to a situation involving the sale of "tax liens", the order insofar as it dismissed the first cause of action in each complaint upon the *Ueck* rationale should be reversed.

CARDAMONE and MAHONEY, JJ., concur with MARSH, P. J.; SIMONS, J., not participating; MOULE, J., dissents in an opinion and votes to reverse the orders insofar as they grant defendants' motions to dismiss plaintiffs' first causes of action.

Orders affirmed with costs.

