OPINION OF THE COURT
Gabrielli, J.
The issue on these appeals is whether the acquisition of a tax sale certificate by a taxing district as the result of a tax sale held pursuant to established statutory procedures, extinguishes the right of that taxing district to thereafter impose personal liability for the unpaid taxes in a separate action against the taxpayer. The Appellate Division, relying on this court’s decision in Matter of Ueck (286 NY 1), held that the taxpayer’s personal liability was extinguished when the tax district acquired the tax sale certificates at a duly authorized tax sale. We affirm.
Cargill, Inc., a Delaware corporation with an office and place of business in the City of Buffalo, was the owner in fee of three parcels of real property located in the City of Buffalo, County of Erie, when it ceased paying real property taxes to the city in 1970 and the county in 1971. Cargill failed to pay its taxes in each subsequent year as well, and following these delinquencies the city proceeded to conduct tax sales covering the property. Since no sufficient bids were entered for these properties, the city bid in those parcels, as provided by section *12 612 of the City Charter and subdivision 2 of section 1160 of the Real Property Tax Law. Following these sales the city issued to itself certificates of sale authorized by section 614 of the City Charter and section 1160 of the Real Property Tax Law. Likewise the county, at its tax sales in which similar procedures were followed, purchased tax certificates for each year of tax default pursuant to Erie County Tax Law (L 1942, ch 812, as amd by L 1969, ch 682).
The city and county commenced these actions to collect personally from the defendant for unpaid property taxes under section 926 of the Real Property Tax Law. The city seeks $677,319, including interest and penalties, for unpaid taxes and alleges that if it is relegated to collect only from the property it will engage in a losing proposition since the value of the property is exceeded by the outstanding taxes plus the cost of demolition of the existing abandoned structures now situated on the property. The county seeks $218,963.71. Section 926 of the Real Property Tax Law provides, in pertinent part:
"1. The owner of real property, or of an interest therein, if a resident of the city or town in which such property or interest therein is assessed and if his name is correctly entered on the roll, shall be personally liable for the taxes levied thereon. The term 'resident’ shall include a corporation having within such city or town a place for the regular transaction of business or in actual possession of real property therein.
"2. After the thirty-first day of January, the collecting officer may call on any person personally liable for unpaid taxes listed on the roll and demand payment thereof. If any such person refuses to pay the taxes demanded, the collecting officer may levy upon any personal property in the county belonging to or in the possession of such person and, unless the taxes are paid prior thereto, cause the same to be sold at public auction for the purpose of paying the taxes due and the expense of levy and sale.”
Cargill, relying on Matter of Ueck (286 NY 1, supra), moved to dismiss the complaints in both actions, contending that its personal liability for unpaid taxes was extinguished when the city and county made their purchases at the annual tax sales. In Matter of Ueck (supra) the decedent, Alfred Ueck, had owned parcels of real property in the City of Buffalo, on which real property taxes had not been paid from 1926 to 1937. Tax sales had been held by the city and county respectively and, *13 following statutory procedures for the sale of the property for the payment of unpaid taxes, they each obtained certificates of sale. Following Ueck’s death the taxing districts sought to impose personal liability upon his estate for the real property taxes. This court held that the personal liability of the taxpayer for the taxes was discharged when the taxing districts acquired the tax certificates at a sale held pursuant to the appropriate real property tax law, stating that "[t]he policy of the State and of the political subdivisions affected indicates clearly that when the decedent’s real estate was sold and bid in by the city of Buffalo or the county of Erie for non-payment of taxes, there was payment and discharge of such taxes and that the purchaser, whether city or county, became the inchoate titleholder of the land, evidenced by the tax sale certificate” (Matter of Ueck, 286 NY 1,17-18, supra).
The city charter provisions before this court in Ueck are essentially the same provisions before us now. The charter provides that the collection of every tax remaining unpaid "may be enforced by a sale of the real estate” (§ 610) after appropriate notice which shall state that the real estate will "be sold at public auction to the highest bidder, to pay the taxes” (§ 611). If no bid is made in "an amount sufficient to pay the taxes” the assessor "shall bid in for the city” such parcels since no land can be sold for less than the outstanding taxes and charges (§ 612). After sale, a tax certificate is issued which describes the real estate and states "that the same was sold for unpaid taxes and assessments” (§ 614). The purchaser, whether the city or some other person, was still required to "pay” for its purchases (§ 614). During certain proscribed periods of time the owner of the land may redeem the property by paying the amount of the tax, plus charges and fees (§§ 613, 618-621). If no redemption is made, the holder of the certificate (whether the city or another) may apply for and receive a "conveyance of the real estate so sold, which conveyance shall vest in the grantee an absolute estate in fee” (§ 623).
Emphasizing the statutory language as noted above, which declared that the tax certificate is exchanged in satisfaction of the unpaid taxes, this court held that, under this statutory scheme, the tax liability as it affects the taxpayer personally, had been extinguished. The issue was not whether the taxes had actually been paid but whether they are considered paid as far as the taxpayer is concerned (Matter of Ueck, 286 NY 1, *14 6, supra). Indeed, the city charter itself declares that the real estate will be sold "to pay the taxes” (§ 611). The evidence of the payment of the taxes and extinguishment of any personal liability is the tax certificate. The city charter provides that the certificate shall state that it was "sold for unpaid taxes” (§ 614). Whether this provision amounts to a declaration that an actual or theoretical payment has occurred, the result is that a payment as a matter of law has been effectuated and the personal liability for the taxes is extinguished by that payment.
Prior to a tax sale, the tax district may seek payment for overdue real estate taxes from either the property or the taxpayer, personally. However, when the taxing district acquires a tax sale certificate it, in essence, exchanges its prior rights for the rights which attach, by virtue of law, to the certificate. Personal liability is not one of those rights (see Empire Lien Corp. v Young Transp., 59 Misc 2d 782). Nowhere in the charter nor in any statute or regulation does the holder of a tax certificate acquire the right to seek payment on that certificate from the taxpayer personally. This is not to say that a tax certificate does not provide significant benefits for the holder. The holder may, after the period of redemption has been extinguished, take possession of the property, by eviction if necessary (§ 617) or he may obtain an administrative conveyance of an absolute estate in fee (§ 623). These simplified procedures for obtaining possession or title attach only to the holder of the tax certificate.
Under these statutory provisions the court in Ueck determined, and properly so, that the tax sale extinguished the taxpayer’s personal liability and, further, that the holder of a tax certificate may not sue the taxpayer on a claim of personal liability. The charter provisions before the court in this case are essentially the same as those considered in Ueck and, absent a clear legislative intent to abrogate the effect of Ueck, it must control.
The city urges that the effect of the charter provisions has been changed by the adoption of title 3 of article 11 of the Real Property Tax Law (Resolution 185, Proceedings of the Council, City of Buffalo, 1970, Part II, p 2042).* Title 3 merely provides that a taxing district, holding its own tax certificates, *15 may pursue a simplified in rem foreclosure procedure. Section 1120 of the Real Property Tax Law (the first provision in title 3) provides that:
"1. Whenever it appears that a tax district owns a tax lien which has been due and unpaid for a period of at least four years from the date on which the tax or other legal charges represented thereby became a lien, such tax lien, except as otherwise provided by this title, shall be summarily foreclosed by the tax district in the manner provided in this title notwithstanding the provisions of any general, special or local law and notwithstanding any omission to hold a tax sale prior to such foreclosure.
"2. Ownership of a tax lienor of a tax sale certificate or of any other instrument evidencing such tax lien by the tax district issuing the same shall be evidence of the fact that the tax or other legal charges represented thereby have not been paid to the tax district or assigned by it.”
This section provides a rule of evidence that a tax district holding its own tax sale certificate may avail itself of the in rem foreclosure proceedings; and this rule expands the rights that attach to the tax certificate when held by a taxing district to include the availability of the simplified in rem proceedings. It does not expand the rights under a tax certificate to encompass personal liability. Indeed, a personal judgment cannot be entered under the in rem proceedings (Real Property Tax Law, § 1124, subd 1).
The adoption of title 3 by the city in no way altered the basic tax provisions applicable here but merely expanded the city’s available remedies. Likewise, this additional remedy did not alter the effect of the city charter provisions which, interestingly, remained the same as those considered in Ueck. Thus, there can be no doubt that Ueck is dispositive of the city’s claim and the purchase by the city of the tax sale certificates extinguished the taxpayer’s personal liability.
The position advanced by the county in this case is likewise unconvincing. The Erie County Tax Law (L 1942, ch 812, as amd by L 1969, ch 682) provides for substantially the same procedures and rights as those embodied in the Buffalo City Charter as already considered above. When real estate taxes remain unpaid the county shall hold a tax sale to "sell tax certificates upon such real estate for the payment of such tax” (§ 7-1.0) and the notice of such sale shall state that the tax sale is being held "to satisfy the taxes, fees, penalties interest *16 and charges which may be due” (§ 7-2.0); and, of importance, a tax certificate may be sold only for a sum sufficient to pay all the taxes and charges due (§ 7-5.0). By statutory declaration, when the county purchases at such a sale it shall obtain the same rights as an individual purchaser (§ 7-7.0); and similar redemption rights are provided (§§ 7-13.0, 8-1.0 — 8-7.0). Upon failure to redeem within the specified time the holder of a tax certificate may obtain an administrative conveyance of an absolute fee (§§ 8-8.0, 8-11.0).
Although the statute considered in Ueck and the provisions before us now are essentially the same, the county urges that the amendment in 1969 (L 1969, ch 682) embodied significant changes which evidenced a legislative intent to overturn the effect of Ueck as it applied to the county. The county argues that under the controlling tax law at the time of Ueck "property” was sold, whereas presently only a "tax lien” is sold. The 1969 amendment effected a change in language but any reliance on this change ignores the fact that the focus in Ueck was not on the nature of what was sold but on the purpose and effect of the sale. For example, the amended statute still provides that the tax sale is being held "to satisfy the taxes” (§ 7-2.0) and thus by operation of law the taxes have been paid when the county purchases the tax certificate, just as the taxes would have been paid in full if the certificate were purchased by a private party. Whether the statutes state that it is the "property” or a "tax lien” which is being sold, the effect remains the same. By acquiring the tax sale certificate the tax district obtains the special rights which attach to it but at the same time the right to collect from the taxpayer personally is extinguished because the tax has been paid as a matter of law.
 As with the city, the county can point to no legislative history or any other bill or statute which even faintly suggests that the Legislature intended to overturn the holding of Ueck as it affects the county. Nor does the county point to any provisions of law establishing that the holder of a tax certificate may collect personally from the taxpayer. The tax laws are creatures of the Legislature and changes in these laws or the establishment of specific rights under these laws may not be inferred but must be made in clear and express terms (County Securities v Seacord, 278 NY 34, 37; see People v Cook, 34 NY2d 100, 110). The inference of legislative intent suggested here is particularly weak in view of the fact that *17 the basic tax collection scheme found in the city charter and the county law is essentially unchanged. Had the Legislature, at any time, intended that personal liability would survive a tax sale or would attach to a tax sale certificate, it would have been a simple matter to so declare. The Legislature could have easily amended section 926 of the Real Property Tax Law to extend personal liability. But no such declaration has been made and Ueck has been law since 1941. When the Legislature has refrained from changing the rule for 37 years it would be presumptuous of us to attempt to do so now. To reach a contrary result, this court would be remodeling the law on a scale which is well beyond our judicial power (see F. T. B. Realty Corp. v Goodman, 300 NY 140, 148).
A number of property owners, especially in large cities, are finding that the value of their property has decreased to such an extent that continued ownership is no longer profitable or desirable, particularly in view of the ever increasing real property tax liability. Consequently, some owners have ceased paying taxes, realizing that title to the property will eventually vest in another person or the taxing district. The taxing districts in certain instances, on the other hand, may not only lose income but may also become the owners of some of this unwanted real property, which the previous owners can no longer maintain. In some instances the district must assume the additional burden of demolishing dangerous and dilapidated structures. Perhaps a part of this problem lies in an increasing tax burden and our tax statutes which provide for a variety of foreclosure procedures for the collection of unpaid real property taxes. The solution to this dilemma, having ramifications beyond the problem posed by these cases, is one which rests with the Legislature.
 We find nothing of substance which distinguishes the present cases from Ueck. Since Ueck has been consistently followed by the courts of this State (see Matter of Van Korb, 266 App Div 1041; Matter of Wood, 187 Misc 972 [Witmer, J], affd 273 App Div 937; Empire Lien Corp. v Young Transp., 59 Misc 2d 782, supra) and in view of the nature of the Ueck rule we deem the doctrine of stare decisis of no small importance. The doctrine is particularly compelling in cases such as these involving property rights and property dispositions (see People v Hobson, 39 NY2d 479, 489; Matter of Eckart, 39 NY2d 493, 500). Likewise, precedents involving statutory interpretation should be accorded great reliability (Matter of Schinasi, 277 *18 NY 252, 265-266) since the Legislature is readily able to make any appropriate change (see People v Hobson, supra; Matter of Eckart, supra, p 499). Adherence to precedent is particularly applicable to interpretations of tax statutes which may effect and influence major decisions that taxpayers must make. Because of the nature of the question in issue here the doctrine of stare decisis is appropriate and the rule announced in Ueck is to be followed.
A contrary result is not dictated by Matter of County of Nassau (Gelb—Siegel) (24 NY2d 621), which is in no wise dispositive of the issue before us. The issue in that case was whether ownership in condemned real property lies with the owner of record at the time of condemnation or with the holder of a tax certificate who obtains a title deed after the condemnation. Intimating that the reference in Ueck to the holders of tax sale certificates as "inchoate titleholders” was dicta, the Nassau court held that under the statute applicable in that case the purchaser of the tax certificate obtained only a lien interest which was extinguished by the condemnation. In determining who had valid ownership at the time of condemnation, the court did not address or consider what effect the purchase of a tax sale certificate has on the personal liability of a taxpayer, which remains the basic and sole issue in these cases. Thus, there is nothing in Matter of County of Nassau to suggest that Ueck is not applicable nor controlling in the present cases.
Accordingly, the orders of the Appellate Division, so far as appealed from, should be affirmed, with costs.

 The adoption of title 3 did not supersede any of the charter provisions but merely added a new in rem foreclosure proceeding to the city’s available remedies (Real Property Tax Law, § 1104).